595 A.2d 6

**UNITED ARTISTS THEATER CIRCUIT, INC., Appellant,**

**v.**

**CITY OF PHILADELPHIA, PHILADELPHIA HISTORICAL COMMISSION, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided July 10, 1991.

Reargument Granted Aug. 30, 1991.

Richard A. Sprague, J. Shane Creamer, Hugh J. Bracken, Pamela W. Higgins, Philadelphia, for United Artists Theater Circuit, Inc.

Maria L. Petrillo, Chief Asst. City Sol., Katherine L. Niven, Chief Counsel, for amicus—Penna. Historical and Museum Com'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

In this appeal of United Artists Theater Circuit, Inc., the question is whether the appellee, Philadelphia Historical Commission (Commission), acting pursuant to the "Historic Buildings, Structures, Sites, Objects and Districts" provisions of The Philadelphia Code (Section 14–2007) in designating the appellant United Artists' Boyd Theater building

14

as historic is in violation of the constitutional rights of the appellant. The Commonwealth Court found no constitutional violation and affirmed the Philadelphia County Common Pleas Court's order dismissing the action. We disagree. After review, we find that by designating the theater building as historic, over the objections of the owner, the City of Philadelphia through its Historical Commission has "taken" the appellee's property for public use without just compensation in violation of Article 1, Section 10 of the Pennsylvania Constitution and we, therefore, reverse.

By a letter dated March 28, 1986, the Commission notified Sameric Corporation of Chestnut St., Inc., the predecessor owner of the Boyd Theater, that it, the Commission, pursuant to Section 14–2007 of the Philadelphia Code, planned to consider, at a public meeting scheduled for April 30, 1986, the proposed designation of the Boyd Theater as historic. The Commission's letter explained its views as to the benefits, limitations and responsibilities which derive from the ownership of property which is designated historic. The then owner, Sameric Corporation, investigated the Commission's proposal of historic designation and did not favor the idea. Sameric Corporation was able to obtain a continuance of the proposed consideration of its building for historic designation at the April 30, 1986 meeting. Subsequently, the matter was continued on five additional occasions. Eventually, consideration of the proposed historic designation was rescheduled for the Commission's meeting of January 28, 1987. Sameric Corporation responded by filing two consecutive lawsuits seeking to enjoin the Commission from holding a meeting on the proposed designation, both of which lawsuits ended without the injunction Sameric Corporation sought. Thereafter, on March 25, 1987, the Commission met, denied Sameric Corporation's motion for a further continuance, presumedly proceeded to hear evidence and argument, and then voted to designate the Boyd Theater as historic. On that same day, Sameric Corporation returned to court requesting an order that the historic designation be vacated and the matter be rescheduled at a Commission

meeting held no earlier than April 2, 1987. Sameric Corporation's request was granted and the proposal to designate the Boyd Theater as historic was rescheduled by the Commission for consideration at a public meeting on April 2, 1987.

A public meeting was held before the Commission on April 2, 1987, commencing at 3:30 p.m. The meeting was called to order by the Chairman, Edward A. Montgomery, Jr. who recognized Commissioner David Brownlee. Commissioner Brownlee took the floor and, specifically referring to the unanimous recommendation of the Designation Committee, raised the matter of the proposed historic designation of the Boyd Theater. Commissioner Brownlee then gave testimony and argument in support of the Commission's proposal to designate the Boyd Theater as historic. (R.R., pps. 53a–63a). Commissioner Brownlee advanced three reasons in support of the recommendation of historic designation: (1) the building is an important example of art deco architecture; (2) the building is the work of an important Philadelphia architectural firm; and (3) the building as a movie palace represents a significant phase in American cultural history and in the history of Philadelphia. (R.R., pps. 53a–54a).

Following Commissioner Brownlee's testimony, Commissioner Randall Baron offered a slide presentation of the Boyd Theater property and furnished additional testimony and argument in favor of the recommendation to designate the Boyd Theater as historic. (R.R., pps. 63a–64a). The testimony of Commissioner Brownlee along with the slide presentation and testimony offered by Commissioner Baron constituted the "case" for historic designation presented "by the Commission",[1] to the Commission. (R.R., p. 64a).

1. We are troubled by a procedure where the Commission, apparently through a designation committee, recommends properties for historical designation, provides the testimony and evidence in support of its recommendation, argues the case for historical designation through one or more of its commission members, and then decides whether the property it recommended should be so designated. There is an obvious lack of due process in such a procedure. The property

Commissioners Brownlee and Baron then answered questions posed by their fellow Commissioners (R.R. pps. 64a–80a), and by counsel for the owner, Sameric Corporation (R.R., pps. 83a–89a).

Mr. Merton Shapiro of Sameric Corporation gave testimony opposing the proposed historic designation. Also giving testimony in opposition to the proposed designation was Emanuel Reider an architect.[2] At the conclusion of the meeting, the Commission voted for historic designation. By letter dated April 14, 1987, the Commission officially notified the owner, Sameric Corporation, that the Boyd Theater property had been designated historic.

Sameric Corporation reacted to the notice of designation by filing a suit in equity and a petition for a preliminary injunction in the Court of Common Pleas of Philadelphia County. Sameric's suit, inter alia, sought a declaratory judgment that the Commission was without authority to designate its Boyd Theater building as historic. The trial court properly treated the suit and petition as an appeal pursuant to the provisions of the Local Agency Law, 2 Pa.C.S. § 752, and the matter was submitted to the lower court upon the record of the meeting before the Commission and the briefs of counsel.[3] The lower court dismissed

owner, whose property rights are put in jeopardy by the Commission's proposal of historical designation, is entitled to a neutral and detached arbiter in the first instance. *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed2d 267 (1972). Under the circumstances, the Commission is hardly a neutral and detached arbiter. To the contrary, the Commission is a determined advocate.

2. Mr. Reider of the award-winning firm Evantash Reider Architects testified, inter alia, that of a list of eighteen features which distinguishes the art deco style, only five of those features are incorporated in the exterior of the Boyd Theater. (R.R., p. 120a) He further testified that the architectural firm which designed the Boyd Theater was not known for its art deco work. (R.R., p. 121a) Additionally, it was his opinion that the theater was a mediocre building. (R.R., p. 122a)

3. Prior to the hearing in the lower court, the parties agreed that the Commission was a local agency and Sameric's suit in equity and petition for an injunction should be treated as an appeal from the Commission's decision pursuant to the provisions of the Local Agency Law, 2 Pa.C.S. § 752.

the appeal. Subsequently, upon further appeal, the Commonwealth Court affirmed. We granted appellant's petition for allowance of appeal to consider, inter alia, the constitutionality of the Commission's actions.[4] While this matter was pending in this court, the Boyd Theater was sold by Sameric Corporation to United Artists and the new owner, United Artists, was substituted as the appellant.

Article I, Section 27 of the Pennsylvania Constitution provides as follows:

> The people have a right to clean air, pure water, and to the preservation of the natural scenic, historic and esthetic values of the environment. Pennsylvania's natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pursuant to that constitutional provision, the City of Philadelphia amended The Philadelphia Code by enacting Section 14-2007, Historic Buildings Structures, Sites, Objects and Districts which states that the purposes of the section are to:

> (1) preserve buildings, structures, sites and objects which are important to the education, culture, traditions and economic values of the city;

"If a complaint in the nature of equity ... is commenced against a government unit ..., objecting to a governmental determination ..., where the proper mode of relief is an appeal from the determination of the government unit, ... the papers whereon the process ... was commenced shall be regarded and acted on as an appeal from such determination...." 42 Pa.C.S. § 708.

4. The standard of review in an appeal from a determination of a local agency is: "[A] reviewing court must affirm the adjudication of the commission unless it is in violation of the constitutional rights of the appellant or not in accordance with law, the procedural provisions of the local agency law are violated, or a finding of fact of the commission necessary to support its adjudication is not supported by substantial evidence, Local Agency Law, Act of April 28, 1978, P.L. 202, No. 53, § 5, 2 Pa.C.S.A. § 754...."
*Tegzes v. Township of Bristol,* 504 Pa. 304, 308, 472 A.2d 1386, 1387 (1984).

(2) establish historic districts to assure that the character of such districts is retained and enhanced;

(3) encourage the restoration and rehabilitation of buildings, structures, sites and objects which are designated as historic or which are located within and contribute to the character of districts designated as historic without displacing elderly, long-term, and other residents living within those districts;

(4) afford the City, interested persons, historical societies and organizations the opportunity to acquire or to arrange for the preservation of historic buildings, structures, sites and objects which are designated individually or which contribute to the character of historic districts;

(5) strengthen the economy of the City by enhancing the City's attractiveness to tourists and by stabilizing and improving property values; and,

(6) foster civic pride in the architectural, historical, cultural and educational accomplishments of Philadelphia.

Section 14–2007 further provides that the Mayor shall appoint a Philadelphia Historical Commission which shall have the power, inter alia, to:

Designate as historic those buildings, structures, sites and objects which the Commission determines, pursuant to the criteria set forth in Subsection (5) of this Section, are significant to the City [5]

---

**5.** Additionally, the Commission has the power: to designate historic districts and delineate the boundaries thereof; to maintain a comprehensive inventory of historic buildings, sites and districts; to review and act upon all applications for permits to alter or demolish historic buildings, etc. or buildings, etc. located in a historic district; to make recommendations to the Mayor and City Council concerning the use of funds to promote preservations aims of the Code; to make recommendations to the Mayor and City Council for the City to purchase any building, etc. where private preservation is not feasible, or that the City acquire any property interest that would promote historic preservation; to increase public awareness of the value of historic preservation; to adopt rules of procedure for the conduct of Commission business; and to keep minutes and records of all proceedings in which proposed historic designations are considered. Section 14–2007(4)(b)–(i).

Section 14–2007(4)(a). Subsection 5, which establishes criteria for historic designation, provides that: "A building ... may be designated for preservation if it;

(a) Has significant character, interest or value as part of the development, heritage or cultural characteristics of the City, Commonwealth or Nation or is associated with the life of a person in the past; or,

(b) Is associated with an event of importance to the history of the City, Commonwealth or Nation; or,

(c) Reflects the environment in an era characterized by a distinctive architectural style; or,

(d) Embodies distinguishing characteristics of an architectural style or engineering specimen; or,

(e) Is the work of a designer, architect, landscape architect or designer, or engineer whose work has significantly influenced the historical, architectural, economic, social, or cultural development of the City, Commonwealth or Nation; or,

(f) Contains elements of design, detail, materials or craftsmanship which represents a significant innovation; or,

(g) Is part of or related to a square, park or other distinctive area which should be preserved according to an historic, cultural or architectural motif; or,

(h) Owing to its unique location or singular physical characteristics, represents an established and familiar visual feature of the neighborhood, community or City; or,

(i) Has yielded, or may be likely to yield, information important in pre-history or history; or,

(j) Exemplifies the cultural, political, economic, social or historical heritage of the Community.

The stated purposes of Section 14–2007 are laudable, but the question is whether the costs associated with Philadelphia's desire to preserve "historic" buildings, sites, objects and districts should be borne by all of the taxpayers or whether those costs can be lawfully imposed on the owner

of any property the Commission chooses to designate as historic.

Under Section 14–2007, historical designation has a significant impact on the rights and interests of the owner of the property designated. The Philadelphia Code provides that "[b]efore the Department (of Licenses and Inspections) may issue a permit to alter or demolish an historic building, structure, site or object; ... the permit application shall be forwarded to the Commission for its review." Section 14–2007(7)(c). The Department of Licenses and Inspections "shall post, within seven (7) days, notice indicating that the owner has applied for a permit to demolish the property; that the property is historic ...; that the application has been forwarded to the Commission for review" Section 14–2007(7)(b). Further,

> At the time that a permit application is filed with the Department (of Licenses and Inspections) for alterations, demolition or construction subject to the Commission's review, the applicant shall submit to the Commission the plans and specifications of the proposed work, including the plans and specifications for any construction proposed after demolition and such other information as the Commission may reasonably require to exercise its duties and responsibilities under [the ordinance]. Section 14–2007(7)(e).

Additionally, "[i]n any instance where there is a claim that a building, structure, site or object cannot be used for any purpose for which it is or may be reasonably adapted, or where a permit application for alteration, or demolition is based, in whole or in part, on financial hardship, the owner shall submit, by affidavit, the following information to the Commission:" (1) the amount the owner paid for the property, the date of purchase and the name of the former owner; (2) the assessed value of the property; (3) detailed financial information pertaining the the property for the previous two years; (4) all appraisals of the property obtained by the owner relating to the purchase of financing of the property; (5) a schedule of every listing of the property for sale or for

rent with financial details; (6) a statement of any considera-
tion which the owner gave pertaining to profitable adaptive
uses for the property. Section 14–2007(7)(f)(1–6). Addition-
ally, "the Commission may further require the owner to
conduct, at the owner's expense, evaluations or studies, as
are reasonably necessary in the opinion of the Commission
to determine whether the building ... has or may have
alternate uses consistent with preservation." Section 14–
2007(7)(f)(7). Where the Commission has an objection, the
Department ("of Licenses and Inspections) *shall* deny the
permit." Section 14–2007(7)(g)(2). (Emphasis supplied).

> The Commission may require that a permit for the altera-
> tion or demolition of any building ... subject to its review
> be issued subject to such conditions as may reasonably
> advance the purposes of [the ordinance]. The Depart-
> ment (of Licenses and Inspections) *shall* incorporate all
> such requirements of the Commission into the permit at
> the time of issuance. Section 14–2007(7)(i). (Emphasis
> supplied).

At the hearing on April 2, 1987, counsel for the owner
stated that he was informed that in Philadelphia the only
changes or improvements a property owner can lawfully do
without a permit is paint and paper. (R.R., p 127a) Thus,
after historic designation, any work other than painting and
papering would require the Commission's approval. He
further observed that the owner would be legally obligated
to obtain permission from the Commission to move a mirror
from one wall to another.[6] (R.R., pps. 127a–128a). No one
on the Commission disputed counsel's observation.

 When, in April, 1987, the Boyd Theater was desig-
nated as historic over the objections of the owner, the
Commission obtained almost absolute control over the prop-
erty, including the physical details and the uses to which it
could be put. Further, the historic designation imposed
upon the owner an affirmative duty to preserve the build-

6. There was much testimony concerning a variety of mirrors which
adorned the interior of the theater and which Commissioners Brown-
lee and Baron believed to be significant. (R.R., pps. 58a, 63a, 64a,
65a, 111a and 112a)

ing, at the exclusive expense of the owner, in the condition, configuration, style and appearance mandated by the Commission.

> The exterior of every historic building ... shall be kept in good repair as shall the interior portions of such buildings ..., neglect of which may cause or tend to cause the exterior to deteriorate, decay, become damaged or otherwise fall into a state of disrepair. Section 14–2007(8)(c).

This affirmative obligation to preserve the building in the manner dictated by the Commission is backed by criminal penalties. Section 14–2007(9)(c).[7]

Article 1, Section 10 of the Pennsylvania Constitution provides in part: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."[8] Prior to the historical designation of the Boyd Theater that property could have been used by the owner for any lawful purpose just as neighboring property owners could and can so use their properties. Further, prior to the historical designation of the Boyd Theater the owner could, without governmental control, alter, revise and remodel the premises in any lawful way just as neighboring properties could and can be altered, revised and remodeled. Now, however, after the Commission has designated the Boyd Theater as historic, the law requires that the property be maintained in its present state at the owner's expense unless the Commission grants permission for a change. "Regulation amounts to a taking when government forces 'some people alone to bear public

---

**7.** "Any person who violates a requirement of this Section or fails to obey an order issued by the Department shall be subject to a fine of three hundred (300) dollars or in default of payment of the fine, imprisonment not exceeding ninety (90) days." Section 14–2007(9)(c).

**8.** This right is also secured by the Fifth Amendment of the Federal Constitution which provides in part: "nor shall private property be taken for public use, without just compensation." This Fifth Amendment provision is made applicable to the states by the Fourteenth Amendment. *Chicago B & Q R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). We, however, do not consider the Fifth Amendment of the Federal Constitution in our decision. Rather, we decide this case entirely upon Article 1, Section 10 of the Pennsylvania Constitution.

burdens, which in all fairness and justice, should be borne by the public as a whole.' " *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.*, 492 Pa. 326, 334, 424 A.2d 1213, 1218 (1980) citing *Armstrong v. U.S.*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). Here, Philadelphia, in assuming control over the Boyd Theater property, is forcing the owner of that property to bear a *public* burden, ostensibly to enhance the quality of life of the public as a whole. Philadelphia has decided that the Boyd Theater shall be preserved for the benefit of sightseers and the public at large. This is a burden that, in fairness and justice, should be borne by all.

■ The Commission, citing the United States Supreme Court opinion in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) argues that historic preservations laws have been enacted, principally in recognition of two concerns:

The first is recognition that, in recent years, large numbers of historic structures, landmarks, and areas have been destroyed without adequate consideration of either the values represented therein or the possibility of preserving the destroyed properties for use in economically productive ways. The second is a widely shared belief that *structures with special historic, cultural, or architectural significance enhance the quality of life for all.* Not only do these buildings and their workmanship represent the lessons of the past and embody precious features of our heritage, they serve as examples of quality for today. '[H]istoric conservation is but one aspect of the much larger problem, basically an environmental one, of enhancing—or perhaps developing for the first time—the quality of life for people.' 438 U.S. at 108 [98 S.Ct. at 2651] (footnotes omitted) (Emphasis added).

(Brief of Appellee, p. 27) The Commission argues that these values are explicitly embodied in the Pennsylvania Constitution [9] and are the basis of historic preservation ordinances including Section 14–2007 of the Philadelphia

9. Article 1, Section 27.

Code. The Commission contends that the historic designation of the Boyd Theater pursuant to the provisions of Section 14–2007, and in furtherance of those values, constitutes a valid exercise of the police power. In *Redevelopment Authority of Oil City v. Woodring*, 498 Pa 180, 445 A.2d 724 (1982) we stated:

> In a case involving the constitutionality of a zoning ordinance, this Court held that 'neither aesthetic reasons nor the conservation of property values or the stabilization of economic values ... are, singly or combined, sufficient to promote the health or the morals or the safety or the general welfare of the ... inhabitants or property owners.' *Medinger Appeal*, 377 Pa. 217, 226, 104 A.2d 118, 122 (1954). This Court concluded that actions taken in furtherance of these objectives could, therefore, never constitute an exercise of the police power. This definition of police power is equally applicable in a case where there is an alleged exercise of the power of eminent domain; police power is the same, whether it is used to justify a zoning ordinance or a taking for public use without compensation....

*Id.,* 498 Pa. at 186, 445 A.2d at 727. This interpretation of police power is likewise applicable where, as here, government seeks to exercise control over private property through a historic preservation ordinance. "Police power controls the use of property by the owner, for the public good, its use otherwise being harmful ..." *White's Appeal*, 287 Pa. 259, 264, 134 A. 409, 411 (1926). "If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the judicial duty [to] ... declare the given exercise of the police power invalid." *Id.,* 287 Pa. at 265, 134 A. 409. Additionally, where the exercise of police power concerns restrictions on the use of private property, such as regulation of property designated as historic, it is subject to constitutional limitations. See *Id.,* 287 Pa. at 264, 134 A. 409.

In a dissenting opinion filed by Judge Harry Kramer in the case of *First Presbyterian Church of York v. City Council of the City of York*, 25 Pa.Commw. 154, 360 A.2d 257 (1976) he observed that:

[O]ur founding fathers and their contemporary patriots were as much interested in protecting citizens' private property rights against encroachments by government as they were in liberty itself. And so they made constitutional provisions against government taking private property for public use except through the stringent and restrictive governmental powers of eminent domain.

These very basic private property principles have been eroded during the past fifty years especially through, inter alia, the application of zoning laws [10] and urban redevelopment laws.... It seems ... that with the advent of historical [preservation] statutes, such as [that] involved in this case, ... the legislatures and the courts are adding a new dimension which may do violence to constitutional private property rights, for now we hold that a private property owner must make his property available without compensation for public view. In ef-

**10.** Restrictions established by historic preservations laws such as Section 14–2007 of the Philadelphia Code differ from those imposed by zoning laws.

Typical zoning restrictions may, it is true, so limit the prospective uses of a piece of property as to diminish the value of that property in the abstract because it may not be used for the forbidden purposes. But any such abstract decrease in value will more than likely be at least partially offset by an increase in value which flows from similar restrictions as to use on neighboring properties. All property owners in a designated area are placed under the same restrictions, not only for the benefit of the municipality as a whole but also for the common benefit of one another. In the words of Mr. Justice Holmes, speaking for the Court in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), there is 'an average reciprocity of advantage.'

*Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 2667, 57 L.Ed.2d 631 (1978) (Dissenting opinion by Rehnquist, J. now C.J.) When a specific piece of property is targeted and treated differently from neighboring properties, no such reciprocity exists. If anything, singling out the Boyd Theater for historic designation is akin to "spot zoning" which we have declared to be illegal. *French v. Zoning Board of Adjustment*, 408 Pa. 479, 184 A.2d 791 (1962).

fect, he must dedicate his property without compensation for public historical, aesthetic, educational, and museum purposes, which in reality are public uses.

*Id.,* 25 Pa. Commonwealth Ct. at 165, 360 A.2d at 262–263. In this case, the owner of the Boyd Theater is required by ordinance to assume and discharge an affirmative duty to use the property and preserve the premises in the condition and style as dictated by the Commission, at the owner's exclusive expense and without compensation. "A man's home and property used to be his castle." *Cass Plumbing & Heating Co. v. PPG Industries, Inc.,* 488 Pa. 564, 565, 412 A.2d 1376, 1377 (1980) (Dissenting Opinion, Larsen, J. joined by Flaherty, J.) Because one's property was built in a certain architectural style or designed by a particular architect does not make it any less his castle. "Over [60] years ago, Mr. Justice Holmes, ... warned that the courts were 'in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change'." (citation omitted) *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 152, 98 S.Ct. 2646, 2673, 57 L.Ed.2d 631 (Dissenting Opinion by Rehnquist, J., now C.J.). Accordingly, we hold that the "Historic Buildings, Structures, Sites, Objects and Districts" provisions of the Philadelphia Code (Section 14–2007), which authorize the historic designation of private property—in this case the Boyd Theater—without the consent of the owner,[11] are unfair, unjust and amount to an unconstitutional taking without just compensation in viola-

11. Unlike the Philadelphia Code, under Pennsylvania's Historic Preservation Act, 1988, May 26, P.L. 414, No. 72, 37 Pa.C.S. § 501, et seq., private property may not be included on the historic register if the owner objects.

The owner of private property of historic, architectural or archaeological significance, or a majority of the owners of private properties within a proposed historic district, shall be given the opportunity to concur in, or object to, the nomination of the property or proposed district for inclusion on the Pennsylvania Register of Historic Places. If the owner of the property, or a majority of the owners of the properties within the proposed historic district, object to the inclusion, the property shall not be included on the register.

tion of Article 1, Section 10 of the Pennsylvania Constitution.[12] The order of the Commonwealth Court is reversed.

CAPPY, J., filed a concurring opinion joined by NIX, C.J., and McDERMOTT, J.

CAPPY, Justice, concurring.

I concur in the result reached by the majority herein. I believe that the ordinance in question, section 14–2007, permits only the exterior of buildings to be designated as historical and does not refer to the interior of such buildings. The only reference within the entire ordinance that makes any distinction between exterior and interior is section 14–2007(8)(c), which provides, in pertinent part:

The exterior of every historic building, structure and object and of every building, structure and object located within an historic district shall be kept in good repair *as shall the interior portions of such buildings, structures and objects, neglect of which may cause or tend to cause the exterior to deteriorate, decay, become damaged or otherwise fall into disrepair.*

I find the plain meaning of this ordinance is that any reference to the interior of the building is only to the extent that it affects the exterior. As such, I do not believe we need to reach the issue of whether the designation of the subject building, both the exterior and interior, constitutes an unconstitutional "taking" for which compensation is required.[1] Rather, I would find that the Commission is

37 Pa.C.S. § 503. This provision requiring the consent of the owner avoids the constitutional violation of "taking" without just compensation.

12. The appellant also challenged the Commission's power to designate the interior of a private building, such as its Boyd Theater, as historic, and the sufficiency of the evidence. Since we have held that the Commission's designation of appellant's building violates the Pennsylvania Constitution, we find it unnecessary to address the other issues raised.

1. I note that the majority opinion herein does not address the holding of the United States Supreme Court decision in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631

without authority, under the ordinance, to designate the interior of a privately owned building historical. As such, I would deem the acts of the Commission in the instant case as overbroad and without force and effect.

It is a long standing principle of jurisprudence that where an issue can be resolved on a basis other than constitutional law, the court should not address the constitutional question. See *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983); *Ballou v. State Ethics Commission,* 496 Pa. 127, 436 A.2d 186 (1981); *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977). Furthermore, "courts may not declare a statute unconstitutional 'unless it *clearly, palpably,* and *plainly* violates the Constitution.'" *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975), quoting *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963) (emphasis in original).

For the foregoing reasons, I would reverse the opinion of the Commonwealth Court and find that the acts of the Commission were without force and effect. I concur in the result.

NIX, C.J., and McDERMOTT, J., join the concurring opinion of CAPPY, J.

(1978), but rather focuses on the dissent. In *Penn Central,* the Court held, *inter alia,* that the New York City Landmark's Preservation Law did not constitute a "taking" under the Fifth Amendment to the United States Constitution that would require "just compensation." Although *Penn Central* was decided on federal constitutional law and the majority has decided the case *sub judice* under state constitutional law, I do not believe that the language of our state constitution necessarily mandates a different outcome on the issue of "taking."