IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Wyomissing Area School District, | : |
| | : No. 447 C.D. 2015 |
| Appellant | : Argued: October 5, 2015 |
| | : |
| v. | : |
| | : |
| Zoning Hearing Board of Wyomissing | : |
| Borough, and Wyomissing Borough | : |
| | |
| Wyomissing Area School District | : |
| | : |
| v. | : |
| | : |
| Wyomissing Borough, and Michelle | : |
| Bare, in her official capacity as the | : |
| Building and Zoning Official of | : |
| Wyomissing Borough | : |

BEFORE:     HONORABLE BERNARD L. McGINLEY, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  November 25, 2015


The Wyomissing Area School District (School District) appeals from the March 6, 2015, order of the Court of Common Pleas of Berks County (trial court) affirming the decision of the Zoning Hearing Board of Wyomissing Borough (ZHB). The ZHB denied the School District's zoning permit application and miscellaneous permit application (Applications) to erect a fence and dismissed the School District's complaint in mandamus and motion for peremptory judgment in mandamus. We reverse.

Since 1987, the School District has owned the four contiguous parcels (collectively, the Property) that are the subject of this appeal, all located in an R-1 Residential Zoning District in Wyomissing Borough (Borough) in Berks County. (ZHB's Findings of Fact, Nos. 2-4.) School uses are permitted as a special exception in R-1 Residential Zoning Districts. The School District's combined junior/senior high school, constructed before the enactment of the Wyomissing Borough Zoning Ordinance (Ordinance), is located on the Property and is a preexisting, nonconforming use. (*Id.*, No. 18(j)(5).) Several of the School District's athletic facilities are also located on the Property, including a football field, tennis courts, bleachers, a concession stand, a press box, and a fieldhouse. (*Id.*, No. 6.) The School District's use of the athletic facilities is an accessory use to the Property's preexisting, nonconforming school use. (*Id.*, No. 18(j)(5).) The Property is not part of the Borough's parks and recreation property. (*Id.*, No. 19(e).)

On November 12 and 14, 2013, the School District submitted its Applications to the Borough to erect a fence around the athletic fields on the Property. The proposed fence would be a 6-foot-tall, ornamental, metal picket fence with brick columns and sections of polyvinyl chloride-coated chain link fencing with 6-to 12-foot-wide double swing gates. (*Id.*, No. 6.) The fence has seven gates, five of which are 12 feet wide. (*Id.*, No. 23(*l*).) The gates and their dimensions are depicted on Drawing Z-2 that was submitted with the School District's Applications. (*Id.*, No. 23(*l*); N.T., 5/27/14, at 163; Exs. 15, 17.) The gates in the fence would use existing access points and pathways. (ZHB's Findings of Fact, No. 23(q).)

On January 9, 2014, Michele Bare, the Borough's zoning officer and secretary of the ZHB, denied the Applications under sections 403, 703.5, 101.1, and

2

612 of the Ordinance. Thereafter, the School District appealed Bare's determination to the ZHB.

The ZHB held hearings on March 31, May 27, and June 11, 2014. Bare testified on behalf of the ZHB. Bare testified that the fence would affect pedestrian and vehicular traffic by creating a barrier between the public streets and the athletic facilities on the Property. (N.T., 3/31/14, at 121-22.) Bare also testified that the School District failed to provide sufficient information on the zoning plans to address certain questions, such as whether the fence would reduce the available street parking, how the fence would affect parking during football games, and whether emergency vehicles would be able to access the Property when the fence's gates are locked. (*Id.* at 123-24.)

Jeffrey Biehl, the Borough's chief of police, also testified on behalf of the Borough. Biehl testified that the fence's gates would create "choke points," which could cause pedestrian congestion. (*Id.* at 73.) Biehl testified that, in general, fences can make policing more difficult because police may be unable to see persons on the other side of a fence. (*Id.* at 81-82.) Additionally, Biehl testified that the fence might make the enclosed area a popular place for minors to drink, stating: "Once they hop that fence, they're in there. My guys aren't going to hop that fence unless they have to." (*Id.* at 91.)

Bruce Longenecker, the Borough's fire commissioner, testified on behalf of the Borough. Longenecker's duties include reviewing building plans and conducting fire code inspections. (*Id.* at 93-96.) Longenecker testified that the plans that the School District submitted with its Applications were not sufficiently detailed

3

for Longenecker to determine if emergency vehicles could gain access to the fence's gates on Evans Avenue and Girard Avenue. (*Id.* at 102-04.) Longenecker testified to the dimensions of the emergency vehicles, the widest of which are eight feet. (*Id.* at 97-98.)

Hugh Cadzow, the landscape architect who prepared the Applications, testified on behalf of the School District. Cadzow testified that the fence's gates would be open during daylight hours and secured after dusk. (N.T., 5/27/14, at 263.) Cadzow further testified that the surrounding community would still have access to the Property during daylight hours, including weekends, when the athletic facilities are not being used for school purposes. (*Id.* at 263-64.) Cadzow also acknowledged that one of the fence's gates crossed a sidewalk leading to a parking lot on the Property. (*Id.* at 249-50.)

On October 20, 2014, the ZHB affirmed Bare's denial of the Applications. The ZHB determined that the fence would either expand the preexisting, nonconforming school use or create a new stadium use integral to the School District's larger "Spartan Pride Stadium Project" (Stadium Project). (ZHB's Decision at 46-47.) The ZHB determined that the fence would, therefore, require a special exception under section 403 or 703.5 of the Ordinance. (ZHB's Conclusions of Law, No. 11.) The ZHB further determined that the fence would violate section 101(I) of the Ordinance because the fence would: (1) create safety hazards; (2) cause traffic congestion; (3) create a "haven for crime"; and (4) change the "open" aesthetic of the neighborhood and lower property values. (ZHB's Decision at 46, 50-51; ZHB's Conclusions of Law, No. 10.) Finally, the ZHB concluded that the fence

4

would be "noxious, injurious, or offensive" in violation of section 612 of the Ordinance. (ZHB's Decision at 50-51.)

On November 19, 2014, the School District appealed to the trial court. On December 11, 2014, the School District also filed a complaint in mandamus and a motion for peremptory judgment in mandamus, requesting that the trial court compel the Borough and the ZHB to grant the Applications. On December 22, 2014, the trial court consolidated the School District's mandamus action with its land use appeal. On December 22, 2014, "Stop The Fence," a neighborhood group opposed to the fence, filed a petition to intervene, which the trial court granted on February 25, 2015.[1] On March 3, 2015, the trial court held a hearing on the consolidated actions; the parties submitted no additional evidence. On March 6, 2015, the trial court denied the School District's land use appeal and dismissed the mandamus action.

On March 26, 2015, the School District appealed to this court.[2] On March 31, 2015, the trial court ordered the School District to file a concise statement of errors complained of on appeal, which the School District did on April 17, 2015.

---

[1] "Stop The Fence" joined in the briefs of the ZHB, Borough, and Bare.

[2] Where the trial court takes no additional evidence, our review is limited to determining whether the ZHB committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). The ZHB commits an abuse of discretion where substantial evidence does not support the ZHB's findings. *Lee v. Zoning Hearing Board of Stroud Township*, 811 A.2d 1123, 1124 n.4 (Pa. Cmwlth. 2002). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* Although this court is bound by the ZHB's determinations of credibility and evidentiary weight, we conduct an independent review to determine whether the ZHB's findings of fact are supported by substantial evidence. *Martin Media v. Hempfield Township Zoning Hearing Board*, 671 A.2d 1211, 1216 (Pa. Cmwlth. 1996).

On May 15, 2015, the trial court issued a Pa. R.A.P. 1925(a) opinion in support of its March 6, 2015, order.  Thereafter, the Borough and Bare submitted an application to quash the School District's appeal insofar as it concerns the trial court's denial of mandamus relief.[3]

First, the School District argues that the ZHB committed an error of law or abused its discretion in finding that the fence would expand the Property's current uses and that the School District was thus required to request a special exception under section 403 of the Ordinance.  We agree.

Under section 403 of the Ordinance, a special exception is required for an elementary, middle, or high school use in an R-1 Residential Zoning District.  Section 201 of the Ordinance (emphases added), defines "use" as "the specific *purpose* for which land, a sign or a structure or building is . . . intended . . . or *any activity, occupation, business or operation* which may be carried on, thereon or therein."  Additionally, section 201 defines a "nonconforming use" as "any structure . . . or use of land which is inconsistent with the provisions of this Chapter or amendment thereto and which is in existence as of the effective date of this Chapter."

---

[3] In their application to quash, the Borough and Bare argue that the March 3, 2015, hearing constituted a "trial" and, thus, the School District was required, under Pa. R.C.P. No. 227.1(c)(2), to file a post-trial motion within 10 days of the trial court's March 6, 2015, order.  Because the School District did not file a post-trial motion, the Borough and Bare argue that the School District waived any issues related to the mandamus action.  However, contrary to the Borough's and Bare's assertion, there is nothing in the record indicating that the parties submitted the mandamus action "on stipulated facts" to the trial court.  *See* Pa. R.C.P. No. 1038.1.  Thus, Pa. R.C.P. No. 227.1(c)(2) is inapplicable.  Therefore, we deny the application to quash.

Section 614 of the Ordinance[4] permits fences in R-1 Residential Zoning Districts as long as they meet certain material and dimensional requirements.

Here, the sole subject of the School District's Applications was a fence that would be located on the Property and enclose the School District's existing athletic facilities. The ZHB concluded that because the School District never received approval for the preexisting, nonconforming school use, any expansion of an accessory athletic use would require an exception under section 403 of the Ordinance. The ZHB found that the fence would expand the current accessory use, crediting testimony that the fence was merely the "last step" in the Stadium Project. However, the record contains no evidence that the fence *itself* would relate specifically to either a school or an athletic purpose or would facilitate school or athletic activities *beyond* those that already exist on the Property. Additionally, section 614 of the Ordinance expressly permits fences in R-1 Residential Zoning Districts, and the ZHB did not find that the fence would not meet the requirements of that provision. Therefore,

---

[4] Section 614 of the Ordinance provides:

1. Except as otherwise provided in this Chapter, fences, walls and hedges may be placed within front, rear and side yards; provided, that no fence, wall or hedge shall be erected or planted within the right-of-way lines of any street, nor shall they encroach upon any street right-of-way at any time.

2. Fences, walls and hedges shall comply with the corner lot restrictions of this Chapter.

3. No fence or wall, except a retaining wall, shall exceed six feet in height, unless otherwise required by this Chapter.

4. Fences shall be constructed of wood, chain link or similar appropriate materials approved by the Zoning Officer, be of uniform construction and be constructed in a workmanlike manner.

substantial evidence does not support the ZHB's finding that the fence would expand the Property's existing uses such that the fence required a special exception under section 403 of the Ordinance.

Next, the School District argues that the ZHB committed an error of law or abused its discretion in concluding that the School District was required to request a special exception under section 703.5 of the Ordinance because the fence would create a new "stadium use." Again, we agree.

Under section 703.5 of the Ordinance,[5] landowners must request a special exception to change an existing, nonconforming use into a new nonconforming use. This court has rejected similar arguments that structures on school-owned property intended for the school's athletic programs create a new use distinct from the property's principal or accessory uses. *See, e.g., Appeal of Baldwin School*, 932 A.2d 291, 296-97 (Pa. Cmwlth. 2007) (holding that the school's proposed athletic facilities on its property must satisfy parking requirements for educational uses but need not satisfy requirements for a recreational or "auditorium"

---

[5] Section 703.5 of the Ordinance, provides:

A nonconforming use may be changed to another nonconforming use provided that the proposed use is equally appropriate or more appropriate to the district than the existing nonconforming use. Such determination shall be made through a special exception application to the [ZHB], which shall take into consideration the following issues: the intent of the provisions for the zoning district; the ability to change the use to a conforming use; traffic generation and congestion; noise, smoke, dust, fumes, vapors, gases, heat, odor, glare, vibration, or other nuisances; external storage; solid waste disposal; sewer and water facilities; and the general impact of the use compared to the uses within five hundred (500) feet of the property lines.

8

use).  Webster's Third New International Dictionary 2218 (1986) defines a "stadium" as "a large usu[ally] unroofed structure with tiers of seats for spectators built in various shapes (as circular or elliptic) and enclosing a field[,] usu[ally] used for sports events."[6]

Here, the ZHB found that the Property already contains athletic fields, bleachers, a press box, a concession stand, and a fieldhouse.  Moreover, the ZHB did not specifically find that the fence would create a single building.  Thus, the ZHB's own findings do not support its conclusion that the fence would create a "stadium" under the common definition of that term.  Although the ZHB did not define "stadium," it stated that the fence would create the "hallmarks of a stadium" because it would limit visibility, enclose open space, and allow the School District to control access to the Property.  (ZHB's Decision at 50.)  However, the enclosure of space and limitation of visibility are also the hallmarks of fences, which are permitted in R-1 Residential Zoning Districts.  As to the control of access, the ZHB itself found that the School District has owned the Property since 1987 and that the Property is not part of the Borough's parks and recreation system.  As such, the School District already possesses the right to limit access to the Property.  *See Commonwealth v. Gordon*, 683 A.2d 253, 258 (Pa. 1996) ("Among the critical characteristics of ownership is the right to exclude others from the premises in question.").  Therefore, substantial evidence does not support the ZHB's finding that the fence would create a

_____

[6] Because the Ordinance does not define "stadium" or "stadium use," we may look to the dictionary definition of the term.  *See H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1017 (Pa. Cmwlth. 2002) (stating that courts may consult definitions in a statute, regulation, or dictionary in order to determine the definition of an undefined term).

new "stadium use" requiring a special exception under section 703.5 of the Ordinance.

Next, the School District argues that the ZHB committed an error of law or abused its discretion in concluding that the fence would be inconsistent with the Ordinance's purpose under section 101(I) of the Ordinance. We agree.

Section 101(I) of the Ordinance provides that one purpose of the Ordinance is "to promote the public health and safety and the general welfare of the residents and occupants of the [Borough] by securing safety from fire, panic, flood and other dangers, and . . . [m]aintain the character of existing residential neighborhoods."

In support of its denial of the Applications under section 101(I) of the Ordinance, the ZHB found that the fence would create safety risks. The ZHB found that the Applications and building plans did not show if the fence's gates and the Property's pathways would be wide enough for emergency vehicles nor how the fire department could gain access when the gates are locked. However, the ZHB found that the fence's gates would be 12 feet wide and that the widest emergency vehicles were only 8 feet wide. Additionally, it was improper for the ZHB to consider whether the Property's existing pathways were wide enough for emergency vehicles because the Applications were only for the fence. Although the fence's gates would be locked at night, this alone is insufficient evidence of a safety risk.

Moreover, the ZHB found that the fence would violate section 101(I) of the Ordinance because the fence would increase vehicular and pedestrian traffic

10

congestion. The ZHB credited Bare's testimony that the fence might decrease residential street parking and cause problems with spectator parking. However, Bare gave no explanation as to how the fence, which would not increase the Property's spectator capacity or add new athletic facilities, could have such effects. The ZHB also credited Biehl's testimony that the fence's gates would create "choke points" by narrowing the points of ingress and egress. However, this testimony is insufficient to show increased traffic congestion where the ZHB found that the fence's gates would be located only on the Property's existing access points and pathways.

The ZHB also reasoned that the fence would violate section 101(I) of the Ordinance because it would create "a haven for crime." The ZHB credited Biehl's testimony that fences in general can inhibit police access to and visibility of persons on the opposite side. However, exclusion and privacy are the primary purposes of fences, which are permitted in R-1 Residential Zoning Districts under section 614 of the Ordinance. Although Biehl testified that the area enclosed by the fence would allow underage persons to drink alcohol without being seen, there is no dispute that the fence would be locked at night and that a person would have to scale the six-foot-tall fence to gain access. Therefore, the ZHB's finding is not supported by substantial evidence.

The ZHB also found that the fence would alter the "open" character of the surrounding neighborhood and lower local property values in violation of section 101(I) of the Ordinance. However, "'neither aesthetic reasons nor the conservation of property values or the stabilization of economic values . . . are, singly or combined, sufficient to promote the health or the morals or the safety or the general welfare.'" *United Artists Theater Circuit, Inc. v. City of Philadelphia*, 595 A.2d 6, 12 (Pa. 1991)

11

(citation omitted), *rev'd on other grounds*, 635 A.2d 612 (Pa. 1993); *see also Lombardozzi v. Millcreek Township Zoning Hearing Board*, 829 A.2d 779, 782 (Pa. Cmwlth. 2003) (holding that aesthetic factors alone cannot justify a municipality's zoning decision); *Shamah v. Hellam Township Zoning Hearing Board*, 648 A.2d 1299, 1304 (Pa. Cmwlth. 1994) (holding that an adverse effect on the public welfare cannot be established "by merely introducing evidence to the effect that property values in the neighborhood may decrease"). Because sufficient evidence does not support the ZHB's other bases for denying the Applications under section 101(I) of the Ordinance, the protection of neighborhood aesthetics and property values are insufficient bases for denial. Therefore, the ZHB erred in denying the School District's Applications under section 101(I) of the Ordinance.

Finally, the School District argues that the ZHB committed an error of law or abused its discretion in concluding that the fence was "noxious, injurious, or offensive" under section 612 of the Ordinance. We agree.

Section 612 of the Ordinance (emphases added), provides that:

> No building or structure may be erected, altered or used, and no lot or premises may be used for any activity which is noxious, injurious or offensive *by reason of* dust, smoke, odor, fumes, noise, vibration, gas, effluent discharge, illumination *or similar substances or conditions*.

Here, the ZHB concluded that the fence would be a "noxious structure" under section 612 of the Ordinance based on the same findings on which the ZHB denied the Applications under section 101(I) of the Ordinance. Even if substantial evidence supported these findings, section 612 of the Ordinance would not apply

12

here. Section 612 of the Ordinance only prohibits structures and uses that are noxious due to substances and conditions such as smoke, noise, odor, and illumination.[7] These substances and conditions are all elemental or environmental in nature. In contrast, the issues of impaired emergency access, traffic congestion, crime, aesthetics, and property devaluation are logical or social in nature and, thus, dissimilar to the substances and conditions specified in section 612 of the Ordinance. Therefore, the ZHB erred in denying the Applications under section 612 of the Ordinance.

Accordingly, we reverse.[8]

_____

ROCHELLE S. FRIEDMAN, Senior Judge

---

[7] Although the substances and conditions specified in section 612 of the Ordinance are commonly included in ordinance provisions prohibiting "nuisances," the Ordinance does not define "nuisance."

[8] Our reversal of the trial court's order as to the land use appeal affords the School District the same relief that it sought in its motion for peremptory judgment in mandamus, i.e., the issuance of a zoning permit and a miscellaneous permit. Therefore, we need not address the School District's arguments as to the trial court's dismissal of the School District's complaint in mandamus and motion for peremptory judgment in mandamus.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wyomissing Area School District,     :
                              : No. 447 C.D. 2015
              Appellant     :
                                    :
             v.             :
                                    :
Zoning Hearing Board of Wyomissing     :
Borough, and Wyomissing Borough     :


Wyomissing Area School District     :
                                    :
             v.             :
                                    :
Wyomissing Borough, and Michelle     :
Bare, in her official capacity as the     :
Building and Zoning Official of     :
Wyomissing Borough     :


## O R D E R


AND NOW, this 25th day of November, 2015, we hereby reverse the March 6, 2015, order of the Court of Common Pleas of Berks County and deny the application to quash filed by Wyomissing Borough and Michele Bare.


_____
ROCHELLE S. FRIEDMAN, Senior Judge