558 A.2d 155

Sameric Corporation of Chestnut St., Inc., Appellant *v.* City of Philadelphia, Philadelphia Historical Commission, Appellee.

Argued December 13, 1988, before President Judge CRUMLISH, JR., Judge MCGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*J. Shane Creamer*, with him, *Richard A. Sprague, Hugh J. Bracken* and *Leslie M. Thoman, Sprague, Higgins & Creamer*, for appellant.

*Maria L. Petrillo*, Chief Assistant City Solicitor, with her, *Seymour Kurland*, City Solicitor, and *Ralph Teti*, Chief Deputy City Solicitor, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 2, 1989:

Sameric Corporation (Sameric) is the owner of a motion picture theatre in downtown Philadelphia. It appeals the Philadelphia County Common Pleas Court orders which dismissed its challenge to a Philadelphia Historical Commission (Commission) decision[1] and denied post-

---

[1] Sameric filed a preliminary injunction application and a declaratory judgment action challenging the Commission's authority to designate its building. At the hearing, both parties agreed that the Commission was a "local agency" and that under Section 752 of the Local Agency Law, 2 Pa. C. S. §752, Sameric's action should be treated as an appeal from the complete record developed by the Commission. The common pleas court affirmed the Commission's designation. Upon consideration of the parties' stipulation, this Court by Order of September 9, 1987, consolidated Sameric's notices of appeal from both common pleas court orders.

trial relief. This is a case of first impression in this Commonwealth.

The Commission held public hearings and concluded that Sameric's Boyd Theatre merited historic designation. The Commission found that the building was the work of a prominent Philadelphia architectural firm and that the theatre's *exterior* and *interior* remained a rare example of a substantially "intact Art Deco movie palace" representing a significant phase in American cultural history.[2]

On appeal, Sameric argues that substantial evidence does not support the Commission's designation of the theatre's exterior as historic. It also argues that the commission exceeded its authority by including the theatre's interior in that designation.[3]

Initially, we hold that the testimony of Dr. David Brownlee,[4] a commission member, supports the commis-

---

Because this is a statutory appeal under the Local Agency Law, 2 Pa. C. S. §§551-555, 751-754, Pa. R.C.P. No. 227.1 (governing post-trial relief) is inapplicable. *Pedersen v. South Williamsport Area School District*, 80 Pa. Commonwealth Ct. 292, 471 A.2d 180 (1984). Thus, we now quash Sameric's appeal from the order denying post-trial relief.

[2] Commission member, Dr. David Brownlee, testified that the Boyd Theatre was the work of architects Hoffman and Hernon, a prominent Philadelphia theatre design firm. It was built in 1928 as a 500-seat "first run" movie palace and is culturally representative of the period when motion picture theatres were built to compliment the technological excitement of sound. Although Hoffman and Hernon designed other Philadelphia movie palaces, only the Boyd has survived.

[3] Where the trial court has not taken additional evidence, judicial review of a local agency adjudication is limited to whether the agency's findings of fact are supported by substantial evidence, error of law has been committed or constitutional rights have been violated. *Kujawa v. City of Williamsport*, 67 Pa. Commonwealth Ct. 38, 445 A.2d 1348 (1982).

[4] It was noted at the hearing that Dr. Brownlee published in the area of Twentieth Century American architecture and it was his

sion's determination that the building exterior[5] merited preservation under the statutorily specified criteria.[6] Although Sameric provided evidence that the exterior's art deco design had undergone significant alterations,[7] the record discloses that the Commission did not automatically equate the theatre's architectural significance

---

responsibility to present the Designation Committee's decision. Dr. Brownlee testified that the exterior facade embodied significant art deco characteristics. He noted that the theatre's lower exterior consists of an enclosed ticket booth with a recessed entry framed by the bordering store fronts' long line runs of stainless steel and glass, whereas the upper limestone facade depicts art deco handcarvings, an etched and gilded central bay window and curled gables. Notes of Testimony (N.T.), 4/2/87, pp. 12-18. This testimony was corroborated by the Commission's own official notice: Letter from Edward A. Montgomery, Jr., Chairman of the Commission to "Owner" dated April 14, 1987 (discussing the Boyd Theatre's designation).

[5] The Commission specifically categorized the property as a "building," as that term is defined in the ordinance. N.T., 4/2/87, pp. 33, 89.

[6] The Philadelphia Historic Buildings, Structures, Sites, Objects and Districts Ordinance (ordinance) is codified in the Philadelphia Code, Section 14-2007(1)—(8). Section 14-2007(5) provides in part:

(5) *Criteria for Designation.* A building, complex of buildings, structure, site, object or district may be designated for preservation if it:

(a) Has significant character, interest or value as part of the development, heritage or cultural characteristics of the City, Commonwealth or Nation or is associated with the life of a person significant in the past; or

. . . .

(c) Reflects the environment in an era characterized by a distinctive architectural style; or

(d) Embodies distinguishing characteristics of an architectural style or engineering specimen; or

(e) Is the work of a designer, architect, landscape architect or designer, or engineer whose work has significantly influenced the historical, architectural, economic, social, or cultural development of the City, Commonwealth or Nation

. . . .

[7] N.T., 4/2/87, pp. 38-72.

with its originality or alterations per se. Rather, the Commission interpreted the ordinance to allow designation of the interior and exterior if the redecorations or alterations left the building a substantially intact art deco representation.[8] Thus, we conclude substantial evidence supports the Commission's findings.

The more perplexing problem we must resolve is whether the Commission exceeded its authority by designating as historic the *interior* of the theatre. The ordinance vests the Commission with the authority to designate "buildings, structures, sites and objects." Section 14-2007(4). The Commission relied on the ordinance's definition of "building" as "[a] structure, its site and appurtenances created to shelter any form of human activity." Section 14-2007(2)(b). On this aspect alone, we believe that in order for a building to effectuate the process of sheltering it most certainly requires an interior. Moreover, where the words of a statute or ordinance are not explicit, the intent may be ascertained by considering, among other matters, the object to be attained. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b); *City of Pittsburgh v. Royston Service, Inc.,* 37 Pa. Commonwealth Ct. 394, 390 A.2d 896 (1978).

Here, without explicit reference to building *interiors,* the ordinance seeks to protect architectural styles significantly' representative of historical and cultural development. Thus, we are not persuaded by Sameric's argument that the ordinance may legitimately preserve the theatre's exterior but exclude its interior. This is so, particularly where the interior design reflects the same architectural elements.[9] Rather, we conclude that the

---

[8] N.T., 4/2/87, pp. 20-21, 36-37, 77-80, 92.

[9] Dr. Brownlee testified that it was the customary practice for architects of that period to work closely with a theatre's interior designer and specify the interior architectural motifs that were de-

City Council intended "building" to include both interior and exterior.[10]

Sameric also contends that even if the Commission's interpretation of the ordinance is valid, designation of the interior theatre is an unconstitutional exercise of the state's police powers. Sameric argues that the restrictions placed on its interior private property by historic designation do not demonstrate a substantial relationship to the public good demanded in Section 27 of the Pennsylvania Constitution.[11] We disagree.

The Constitution provides that the public good to be protected is the preservation of the historic and esthetic environment. Although Sameric acknowledges that designating a building's exterior arguably has a reasonable relationship to such environmental values, it intimates that the public good can only be served if public viewing is possible.

However, while Sameric operates a theatre for private economic return, it necessarily depends upon public

---

sired. N.T., 4/2/87, pp. 7, 36-37, 116. He noted the theatre's interior is dedicated to the progress of women and contains an intact mural above the auditorium stage honoring "the Modern Woman." Other art deco motifs are found in the proscenium, geometric statue niches, coves, etched and gilded mirrors as well as a red marble waterfall drinking fountain. N.T., 4/2/87, pp. 12-24.

[10] We note that in defining the "building" as a structure, the ordinance further defines "structure" as "[a] work made up of *interdependent* and *interrelated* parts in a definite pattern of organization ...." Section 14-2007(2)(n) (emphasis added). Here, the hearing testimony establishes a definite interrelationship of interior and exterior architectural elements.

[11] Pa. Const. Art. I, §27. Section 27 states:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefits of all people.

patronage to sustain it. In so doing, it provides an environment consistent with the public's appreciation of an ongoing art deco decor. Under these circumstances, the theatre's interior becomes an essential part of the community's historic and esthetic values. Thus, we conclude the constitutional language clearly includes the appreciation of these interior values, albeit at the expense of economic benefits sought by private enterprise.

As has been spoken by our federal colleagues in construing a similar statute:

> Even if plaintiff's argument that a public purpose can only be served by public viewing ... were accepted, there are in fact numerous conceivable private uses of the interiors of buildings which are compatible with public viewing of the area. Any private use which depends upon public patronage, e.g., a hotel or department store, would allow the public to view and enjoy the interior .... A theater is but one example where, without mandating public invasion of the building or depriving its owners of its only economically viable use, the government can reasonably be expected to satisfy a number of the purposes of a historic preservation statute. ...

*Weinberg v. Barry,* 634 F. Supp. 86, 93 (D.D.C. 1986).[12]

---

[12] In the notable case of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), the United States Supreme Court held that the designation of Grand Central Terminal as a "landmark" pursuant to New York City's Landmark Preservation Law did not result in an unconstitutional taking. Although no distinction was drawn between interior and exterior designations, the Court acknowledged that Penn Central was not challenging the law's requirement to keep the terminal's exterior in good repair, because land-use restrictions or controls to enhance the quality of life by preserving the character and desirable features of a city have repeatedly been upheld. Thus, we find *Penn Central* informative as to this Court's authority to uphold the interior and exterior restrictions found in the Philadelphia Ordinance.

Moreover, if Sameric should close the building's interior, public viewing is not the *sine qua non* to serve a public good. In granting the Commission authority to designate the interior, the ordinance acknowledges the Constitution's mandate that the Commonwealth's historic and esthetic values "are the common property of all people, including generations yet to come." Art. I, §27. As trustee of the historic environment, the Commonwealth must execute a farsightedness which, at times will necessarily transcend private interests. Allowing a private property owner to escape designation of his building's interior simply because the owner may choose to deny public access deprives the Commonwealth *the opportunity* to preserve its historic resources. It also discourages rehabilitation of existing structures for current or potentially different uses. Although Sameric may permissibly choose to close the theatre's interior, we are not so omniscient to conclude that future owners will not use the building in a manner that once again allows interior public appreciation.[13] Thus, because the Ordinance's articulated purposes[14] specifically acknowledge this public benefit for which our Constitution provides, we conclude that applying the ordinance to allow interior designation is substantially related to the public good protected by the Constitution.

Accordingly, the common pleas court orders are affirmed.[15]

---

[13] In Philadelphia alone, for example, the Bourse Building and Fairmount Park's Memorial Hall are two structures of historical significance now used in capacities other than those originally intended.

[14] §14-2007(1)(b).

[15] Sameric's motion for post-trial relief specifically challenged the common pleas court's reliance on *Sameric Corp. of Chestnut Street, Inc. v. Philadelphia Historical Commission*, No. 87-553 Civ. (E.D. Pa. March 4, 1987). In the Eastern District Court, Sameric argued that the proposed historic designation amounted to a taking

### ORDER

The Philadelphia County Common Pleas Court order, No. 3955 April Term 1987, dated May 26, 1987, dismissing the appeal is affirmed and the appeal at No. 1985 C.D. 1987 is quashed.

---

in violation of the Fifth Amendment. The City's motion to dismiss Sameric's complaint was granted because actual designation had not occurred nor had Sameric been denied a demolition permit. While the common pleas court indicated it agreed with the District Court's conclusion, we believe the common pleas court's reasoning was based on a review of the evidence and its own conclusion as to the ordinance's designation authority. Of course, we do not address the question of whether a constitutionally impermissible taking occurred, as it is not now before us.

Although the Commission has denied Sameric's demolition permit for the theatre pursuant to Section 14-2007(7), Sameric's appeal of that denial, filed December 15, 1987, is apparently still pending before the Board of Licenses and Inspection Review.