635 A.2d 612

**UNITED ARTISTS' THEATER CIRCUIT, INC., Appellant,**

**v.**

**CITY OF PHILADELPHIA, Philadelphia Historical Commission, Appellees.**

Supreme Court of Pennsylvania.

Reargued Oct. 23, 1991.

Decided Nov. 9, 1993.

Richard A. Sprague, J. Shane Creamer and Hugh J. Bracken, Sprague, Higgins & Creamer, Philadelphia, for appellant, United Artists Theater Circuit, Inc.

Maria L. Petrillo, Chief Asst. City Sol., Charles W. Bowser, Philadelphia, for appellee.

Thomas A. Leonard, Philadelphia, Katherine L. Niven, Brenda Barrett, Harrisburg, for amicus curiae, Pa. Historical and Museum Com'n.

Frank M. Thomas, Jr. and Mark P. Edwards, Philadelphia, for amicus curiae, Nat. Trust for Historic Preservation, et al.

Mary K. Conturo, Pittsburgh, for amicus curiae, City of Pittsburgh.

Keith Welks, Harrisburg, for amicus curiae, Comm., D.E.R.

Kenneth M. Jarin and Robert C. Drake, Philadelphia, for amicus curiae, Pa. League of Cities.

Gregory R. Neuhauser, Walter W. Cohen, Harrisburg, for amicus curiae, Attorney General of Pa.

Anthony Green, Washington, DC, for amicus curiae, Congressman Thomas M. Foglietta, et al.

Henry Ingram, Pittsburgh, for amicus curiae, Pa. Builders Assoc., et al.

Nancie G. Marzulla, Defenders of Property Rights, Washington, DC.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

## FACTS

On July 10, 1991, this Court found that the Philadelphia Historic Preservation Ordinance "which authorize[d] the historic designation of private property ... without the consent

of the owner, [is] unfair, unjust and amount[s] to an unconstitutional taking without just compensation in violation of Article I, Section 10 of the Pennsylvania Constitution." *United Artists' Theater Circuit, Inc. v. City of Philadelphia, Philadelphia Historical Commission*, 528 Pa. 12, 26–27, 595 A.2d 6, 13–14 (1991).[1] This result stands in contrast to the result reached by the United States Supreme Court in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), in which that Court held that historic designation without the consent of the owner is not a "taking" under the Fifth and Fourteenth Amendments to the United States Constitution.

The City of Philadelphia filed a petition pursuant to Rule 2543 of the Pennsylvania Rules of Appellate Procedure requesting this Court to hear reargument and reconsider our July 10, 1991 ruling that the designation of a building as historic is a "taking" under our Constitution and requires "just compensation." We granted reargument on August 23, 1991, and on October 23, 1991, the parties reargued the sole issue of whether the designation of a building as historic is a "taking" under our Constitution, requiring just compensation. United Artists requests that we reaffirm our July 10, 1991 decision, and hold that a designation as historic is a taking which requires just compensation. The City of Philadelphia and the Philadelphia Historical Commission ("Commission") argue that the rights afforded by the takings provision in our Constitution mirror those of the United States Constitution; moreover, our Environmental Rights Amendment empowers the state and local governments to protect the historic resources of our Commonwealth. For the reasons that follow, we hold that under the Constitution of Pennsylvania, the designation of a building as historic without the consent of the owner is not a "taking" that requires just compensation; however, because the Commission acted outside of its statutory authority, we vacate the Commission's designation of the Boyd Theater as historic.

---

1. For a more detailed explanation of the facts, *see id.* 528 Pa. at 13–17, 595 A.2d at 7–9.

## I. TAKING

### A. UNITED STATES CONSTITUTION

Before we turn to the Commission's actions in this case, we must first examine the constitutionality of historic designation. The United States Supreme Court has ruled that the Fifth and Fourteenth Amendments to the United States Constitution do not prohibit a state or municipality from designating a building as "historic" and placing restrictions on the owner's use of the building. In *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court examined a claim that the New York City Landmarks Preservation Law constituted a "taking" under the Fifth and Fourteenth Amendments of the United States Constitution. The Appellants presented "a series of arguments, which, while tailored to the facts of [that] case, essentially urge[d] that any substantial restriction imposed pursuant to a landmark law must be accompanied by just compensation if it is to be constitutional." *Id.* at 128–29, 98 S.Ct. at 2661–62, 57 L.Ed.2d at 651. The Supreme Court rejected these arguments, and upheld the New York City Landmark Preservation Law. The Court found that there was no taking, that the restrictions imposed were substantially related to the general welfare, and that the regulation permitted a reasonable beneficial use of the landmark site. *Id.* at 138, 98 S.Ct. at 2666, 57 L.Ed.2d at 657.

The issue which confronted the United States Supreme Court mirrors the question before us today: "whether the designation of a property as historic without consent of the property owner constitutes a taking" pursuant to Article I, Section 10 of the Pennsylvania Constitution. Likewise, we are examining many of the same arguments which were raised by the Penn Central Transportation Company. It is without question that this issue, if framed as an examination under the federal Constitution, is answered by the decision of the United States Supreme Court in *Penn Central*. Here the parties urge that we examine the rights afforded to property owners under the Constitution of this Commonwealth, to determine if

the rights under our Constitution are more expansive than those rights guaranteed under the federal Constitution.

## B. PENNSYLVANIA CONSTITUTION

■ This Court has recognized that our Constitution can provide greater rights and protection to the citizens of this Commonwealth than are provided under similar provisions of the federal Constitution. We have stated:

[T]he federal Constitution establishes certain minimum levels which are "equally applicable to the [analogous] state constitutional provision." However, each state has the power to provide broader standards and go beyond the minimum floor which is established by the federal Constitution.

*Commonwealth v. Edmunds,* 526 Pa. 374, 388, 586 A.2d 887, 894 (1991) (quoting *Commonwealth v. Sell,* 504 Pa. 46, 63, 470 A.2d 457, 466 (1983)). In *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), this Court examined the state and federal Constitutions in an appeal which challenged the acceptance of a "good faith" exception to the exclusionary rule. In *Edmunds,* we held that the Pennsylvania Constitution did not incorporate a good faith exception to the exclusionary rule for the violation of the constitutional requirement that search warrants accompany any search or seizure. Mr. Justice Cappy, writing for the majority of the Court, established the following four-part framework for analyzing our state Constitution:

litigants [must] brief and analyze at least the following four factors:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case law;

3) related case law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority,

but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution.

*Edmunds*, 526 Pa. at 390–91, 586 A.2d at 895. Therefore, in accordance with *Edmunds*, we will undertake this four-part analysis.

## II. EDMUNDS

### A. TEXT

The first element to be examined is the text of the Pennsylvania Constitution. It protects the citizens of Pennsylvania from deprivations of property or takings for public use in the following provision:

[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

Pa. Const. art. I, § 10.

Similarly, the federal Constitution protects all citizens of the United States from deprivation of their property:

No person ... shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

Both provisions contain two elements. The first element is that no property may be taken without due process of law or authority of law; the second element requires that just compensation accompany any taking for public use. Therefore, the texts of both constitutional provisions are almost identical for our purposes.

### B. THE HISTORY OF THE PROVISION

The second element of the *Edmunds* analysis is an examination of the history of the provision, including Pennsylvania case law.

Section 10 of Article I has its origins in Clause VIII of the Declaration of Rights in the 1776 Pennsylvania Constitution. This original clause allowed the owner's legal representative,

i.e., the state legislature, to authorize the taking of property without compensation. After the federal Constitution had been ratified, Pennsylvania added a just compensation requirement to its Declaration of Rights in 1790. Since 1790, the relevant provision has remained unchanged. *See* Pa. Const. art. I, § 10 Historical Note (Purdons 1969).

An examination of our case law reveals that this Court has continually turned to federal precedent for guidance in its "taking" jurisprudence, and indeed has adopted the analysis used by the federal courts. In *Best v. Zoning Board of Adjustment*, 393 Pa. 106, 141 A.2d 606 (1958), this Court was faced with a challenge to the determination of the Zoning Board of the City of Pittsburgh that the proposed use of a property as a multiple unit dwelling was adverse to the public health, safety and morals of the community. In *Best*, we explicitly relied upon federal precedent for two propositions. First, in examining the police powers of a state under Section 1 of Article I, we explicitly adopted the following test enunciated by Mr. Justice Harlan in *Chicago, Burlington and Quincy Railway Co. v. Illinois*, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1906): "We hold that the police power of a state *embraces regulations designed to promote the public convenience or the general prosperity*, as well as regulations designed *to promote the public health, the public morals or the public safety.*" *Id.* 393 Pa. at 114, 141 A.2d at 611 (emphasis added). Second, in response to the arguments that the denial of the most profitable use of the owner's property was an unconstitutional taking, this Court flatly rejected that proposition, citing the opinion of *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915). *Best*, 393 Pa. at 119, 141 A.2d at 613 ("Appellant's evidence on this issue amounts to no more than that she is prevented by the ordinance from putting her property to its most profitable use. This is not a constitutional objection.").

Five years later, in *Andress v. Zoning Board of Adjustment of the City of Philadelphia*, we articulated four observations regarding limitations of governmental power:

1) Our State and Federal Constitutions ordain, protect and guarantee *the ownership and use of private property.*

2) The Constitutionally ordained right of private property . . . and other Constitutionally granted rights are not absolute. These rights and freedoms are subject to the paramount right of the Government to reasonably regulate and restrict, under a reasonable and non-discriminatory exercise of the police power, the use of property, whenever necessary for the public health, safety, morals and general welfare.

3) Neither the Executive nor the Legislature, nor any legislative body, nor any zoning or planning commission, nor any other Governmental body has the right—under the guise of the police power, or under the broad power of general welfare, or under the power of the Commander-in-Chief of the Armed Forces, or under any other express or implied power—*to take, possess or confiscate private property for public use or to completely prohibit or substantially destroy the lawful use and enjoyment of property without paying just compensation therefor.*

4) It has been difficult and at times impossible to sharply or clearly draw the dividing line between valid or constitutional zoning on the one hand and illegal or unconstitutional zoning on the other hand, *i.e.,* a taking of property with respect to the entire district zoned or with respect to a particular property.

*Andress,* 410 Pa. 77, 83–84, 188 A.2d 709, 712–13 (1963) (citations omitted). This Court fashioned these limitations from United States Supreme Court precedents in addition to our own jurisprudence. Analyzing the Zoning Board ruling at issue with regard to the limitations on governmental power discussed above, we explicitly relied on *United States v. Central Eureka Mining Company,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228, 1236 (1958) for the following analysis:

Traditionally, we have treated the issue as to whether a particular governmental restriction amounted to a constitutional taking as being a question properly turning upon the

particular circumstances of each case. In doing so, we have recognized that *action in the form of regulation can so diminish the value of property as to constitute a taking.* However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation.

*Andress,* 410 Pa. at 89, 188 A.2d at 715 (quoting *United States v. Central Eureka Mining Co., supra* ). This rationale formed the basis of our holding that the lower court must reevaluate the granting of a variance for the construction of an apartment building in an "A" Residential Zone.

Our reliance upon federal precedent continued in *Commonwealth v. Barnes and Tucker Co.,* 455 Pa. 392, 319 A.2d 871 (1974), where we adopted the following "classic rule" of the United States Supreme Court to determine whether state action constitutes a valid exercise of the police power or a "taking" requiring "just compensation":

> To justify the State in ... interposing its authority in behalf of the public, it must appear, first, that the interests of the public ... require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

*Id.* at 418, 319 A.2d at 895 (1974) (quoting *Lawton v. Steele,* 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894)). We affirmed the test when these parties returned to the Court in *Commonwealth v. Barnes and Tucker Co. (Barnes II),* 472 Pa. 115, 123, 371 A.2d 461, 465 (1977) to challenge a Commonwealth Court Order that the owners of a mine operate a facility to treat 7.2 million gallons of untreated acid mine water, 6 million gallons of which was from sources not owned by the Appellant company. We restated the classic rule of *Lawton v. Steele* to examine the parties "taking" claim. Armed with this test, and having recognized the state's interest in protecting the Commonwealth from additional discharge of polluted water into the waters of the Commonwealth, we held that the Appellant failed to meet its burden of proving

that the Order was unconstitutional. *Id.* at 123–29, 371 A.2d at 465–68.

Following the evolution of the *Lawton v. Steele* test in federal law, this Court refined its taking analysis to include a two-part analysis of the "unduly oppressive" element of the test. In *National Wood Preservers, Inc. v. Commonwealth of Pennsylvania, Dep't. of Envtl. Resources,* 489 Pa. 221, 414 A.2d 37, *appeal dismissed, National Wood Preservers, Inc. v. Pennsylvania Dep't. of Envtl. Resources,* 449 U.S. 803, 101 S.Ct. 47, 66 L.Ed.2d 7 (1980), this Court upheld Section 316 of the Clear Streams Law, 35 P.S. § 691.316, as a constitutional exercise of the Legislature's police power and we held that Section 316 regulated water pollution resulting from conditions other than mine drainage. *Id.* at 225, 414 A.2d at 39. The Appellant in *Wood Preservers* focused his challenge on the requirement that the regulation not be "unduly oppressive upon individuals," the third element of the test enunciated by the United States Supreme Court in *Lawton v. Steele* and adopted by our Court in both *Barnes and Tucker* cases. In response to that challenge, a majority of this Court adopted the following two-part test for determining "unduly oppressive" regulations as enunciated in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978):

> The first consideration is the economic impact of the regulation on the property holder. Specifically, it is relevant to compare property values before and after the regulation, though such a consideration is by no means conclusive.
>
> The second factor identified in *Penn Central* is the character of the governmental action. The greater the extent to which governmental interference with property can be characterized as a physical intrusion, the more likely it is that such interference will be considered an unreasonable exercise of police power.

*Wood Preservers,* 489 Pa. at 236–37, 414 A.2d at 45 (citations omitted). We dismissed the Appellant's claim that Appellant bore no responsibility for the condition of their land and

therefore, should not bear the burden of cleaning it. *Id.* at 238–40, 414 A.2d at 46–47.

Our most recent examination of a taking claim occurred in 1991 where a majority of this Court struck down as unconstitutional an amortization provision in a zoning ordinance which placed a ninety-day expiration period on all nonconforming uses. *PA Northwestern Distributors, Inc. v. Zoning Board of the Township of Moon*, 526 Pa. 186, 584 A.2d 1372 (1991). In *PA Northwestern*, the majority of this Court did not turn to federal precedent for guidance,[2] but relied instead on the long-standing Pennsylvania law that "municipalities lack the power to compel a change in the nature of an existing lawful use of property." *Id.* at 192, 584 A.2d at 1375.

■ Thus, from the above case law, we glean the following three conditions for determining that state or governmental action does not constitute a taking requiring just compensation:

1) the interest of the general public, rather than a particular class of persons, must require governmental action;

2) the means must be necessary to effectuate that purpose;

3) the means must not be unduly oppressive upon the property holder, considering the economic impact of the regulation, and the extent to which the government physically intrudes upon the property.

■ The first consideration is specifically analyzed in subsection D, "Policy Considerations," *infra* at pp. 619–620. As discussed *infra*, the citizens of Pennsylvania empowered the Commonwealth to act in areas of purely historic concern reflecting a general public interest in preserving historic landmarks which requires this type of legislation.

2. The majority's analysis is contrary to federal law, which allows amortization of nonconforming uses provided that the amortization schedule is reasonable with regard to the nature of the business, including any improvements, the character of the neighborhood and the harm to the property owner. *See, e.g., Major Media of the Southeast, Inc. v. City of Raleigh*, 792 F.2d 1269 (4th Cir.1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

With regard to the second element, Appellant urges that instead of historic designations, the City of Philadelphia should exercise its eminent domain powers to purchase properties it seeks to preserve. The United States Supreme Court noted a similar argument in *Penn Central,* and we find instructive its observations:

> The consensus is that widespread public ownership of historic properties in urban settings is neither feasible nor wise. Public ownership reduces the tax base, burdens the public budget with costs of acquisitions and maintenance, and results in the preservation of public buildings as museums and similar facilities, rather than as economically productive features of the urban scene.

*Penn Central,* 438 U.S. at 109 n. 6, 98 S.Ct. at 2652 n. 6, 57 L.Ed.2d at 639 n. 6. There is no other practical means to accomplish the public interest in preserving historic landmarks. Therefore, historic designation is essential to preserve historic landmarks.

Finally, under our last consideration, the unduly oppressive test, we review the economic impact of the regulation and the degree of physical intrusion by the government. Neither side presents specific evidence on the issue of the economic impact of the historic designation; we do note that we have upheld as constitutional regulations that prevent the most profitable use of property. Here, the regulations at issue could arguably deprive the owner of the most profitable use of his property, but this Court does not see the possibility that the owner is wholly deprived of any profitable use.[3] *See Andress,* 410 Pa.

3. There may be circumstances in which the mere designation of a property as historic would constitute a taking due to the extreme financial hardship resulting from such designation. No such facts have been presented in the instant case, nor need we decide here what level of financial hardship would meet this test.

Moreover, we note that the Philadelphia Ordinance in question provides a vehicle for relief when the designation would cause a substantial hardship. The Ordinance provides relief for a party who asserts that he is deprived of "any purpose for which it is or may be reasonably adapted, or where a permit application for alteration or demolition is based, in whole or in part, on financial hardship...." Philadelphia Code § 14–2007(7)(f).

at 89, 188 A.2d at 715; *Best*, 393 Pa. at 119, 141 A.2d at 613. Nor do the parties allege that there is any physical intrusion on the property itself. Thus, the action not being "unduly oppressive," historic designation does not fulfill the elements for a "taking" requiring just compensation.

## C. RELATED CASE LAW

The third factor requires an analysis of related case law from other jurisdictions. Appellees and several Amici stress that no other state has held that historic designation is a taking under its constitution, and our research confirms that point. Appellant concedes the point as well, but argues that this should not be dispositive of the issue.

The fact that no other state has broken with the *Penn Central* decision is not dispositive of the matter, but it is persuasive. In *Edmunds,* when we rejected the United States Supreme Court's recognition of a good faith exception to the exclusionary rule, we noted that the highest courts of four states had rejected the good faith exception. New York had rejected it in 1985, one year after the Supreme Court recognized it. By 1990, at least seven other state appellate courts had eschewed the good faith exception in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Conversely, in fifteen years since *Penn Central,* no other state has rejected the notion that no taking occurs when a state designates a building as historic. The decade and a half in which the *Penn Central* decision has enjoyed widespread acceptance weighs against our rejecting the *Penn Central* analysis.

## D. POLICY CONSIDERATIONS

The last prong of the *Edmunds* test is an examination of policy considerations, including unique issues of state and local concern, and their applicability within modern Pennsylvania jurisprudence. The first issue for us to examine is the issue of unique state concern.

### I. STATE POLICY

Appellant and Appellees argue that two separate sections of Article I of our Constitution ("Declaration of Rights") have

bearing on the state policy regarding historic preservation. Appellant, United Artists, argues that Section 1 of our Declaration of Rights prohibits the historic designation of private property without the owner's consent or compensation. Appellees, City of Philadelphia and the Philadelphia Historical Commission, offer Section 27 of our Declaration of Rights as authority for the historic designation ordinance.

Appellant, United Artists, argues that Section 1 of Article I[4] of our Constitution provides a "direct expression ... of the inherent and fundamental nature of private property." Appellant's Brief at 17. Appellant argues that the lack of such direct acknowledgement of the fundamental and indefeasible right of property in the federal Constitution demonstrates that "private property occupies a more hallowed ground in our Constitution than it does under the Federal Constitution." *Id.* at 18. Therefore, historic designation is contrary to the "inherent and fundamental nature of property." *Id.*

This is contrary to our case law which views the scope of Section 1 of Article I in relation to its federal counterparts, the Fifth and Fourteenth Amendments. In *Best v. Zoning Board of Adjustment*, 393 Pa. 106, 110–11, 141 A.2d 606, 609 (1958) we stated:

> Section 1 of Article 1 of the Pennsylvania Constitution establishes the right of "acquiring, possessing, and protecting property...." The requirements of this *section are not distinguishable from those of section 1 of the Fourteenth Amendment to the Federal Constitution*—"nor shall any state deprive any person ... of property without due process of law...."

(emphasis added) (footnotes omitted). Therefore, Section 1 of Article I is not a source of additional rights for property owners in Pennsylvania.

4.     All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Appellees, conversely, argue that Section 27 of Article I, the Environmental Rights Amendment,[5] establishes a state policy for the preservation of historic resources. Appellees assert that the Historic Preservation Ordinance "seeks to honor the mandate of Article 1, Section 27, that historic and aesthetic resources be preserved." Appellees' Brief at 32. We agree with Appellees that the Environmental Rights Amendment reflects a state policy encouraging the preservation of historic and aesthetic resources.

In 1971, the citizens of Pennsylvania adopted the Environmental Rights Amendment which recognized the "right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment." Pa. Const. art. 1, § 27. Using this provision of the Constitution, a group of citizens sought to block the construction of a battle tower at the site of the Battle of Gettysburg. *See Commonwealth v. Nat'l Gettysburg Battle Tower, Inc.,* 454 Pa. 193, 311 A.2d 588 (1973). In *Gettysburg,* a majority of this Court agreed that the Environmental Rights Amendment authorized the Commonwealth to act in matters of purely historic concerns. *See id.* at 201–02, 311 A.2d at 592, (O'Brien, J.) ("up until now, aesthetic or historical considerations, by themselves, have not been considered sufficient to constitute a basis for the Commonwealth's exercise of its police power"); *id.* at 207, 311 A.2d at 595, (Roberts, J., concurring) ("[p]arklands and *historical sites,* as 'natural resources' are subject to the same considerations"). Ultimately a plurality of the Court held that the Environmental Rights Amendment was not self-executing, and legislative action was necessary to accomplish the goals of that Amendment. *Id.* at 202, 311 A.2d at 592. Thus, this legislative action, the Philadelphia Historic Preservation Ordinance, is consistent with our state policy to preserve historic or aesthetic resources.

5.    The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.
Pa. Const. art. 1, § 27 (adopted May 18, 1971).

## II. LOCAL POLICY

The City of Philadelphia has declared the following local policy regarding the preservation of historic resources:

It is hereby declared as a matter of public policy that the preservation and protection of buildings, structures, sites, objects, and districts of historic, architectural, cultural, archaeological, educational and aesthetic merit are public necessities and are in the interests of the health, prosperity and welfare of the people of Philadelphia.

Philadelphia Code § 14-2007(1)(a). This policy is consistent with the Environmental Rights Amendment and is consistent with our findings in *Gettysburg Battle Tower,* 454 Pa. 193, 311 A.2d 588 (1973). Therefore, similar to the state policy, the local policy issue also weighs against our finding that historic designation is a taking.[6]

### E. CONCLUSION

Analysis of our case law and related case law from other jurisdictions, the texts of the constitutional provisions and policy concerns of this Commonwealth compels us to conclude that the designation of a privately owned building as historic without the consent of the owner is not a taking under the Constitution of this Commonwealth.[7]

### III.

■ Even though the Historic Ordinance is not a taking under our Constitution, we must address the Appellant's other original claims: that the Commission exceeded its statutory

---

6. The parties did not raise nor were we successful in identifying any other unique issues of state and local concern that were relevant to this case.

7. Both parties briefed and argued the issue of whether historic designation constitutes spot zoning. However, spot zoning is not a form of a taking which requires just compensation, it is an arbitrary exercise of police powers that is prohibited by our Constitution. *See Mulac Appeal,* 418 Pa. 207, 210 A.2d 275 (1965); *Glorioso Appeal,* 413 Pa. 194, 196 A.2d 668 (1964); *French v. Zoning Bd. of Adjustment,* 408 Pa. 479, 184 A.2d 791 (1962). Therefore, the spot zoning issue is wholly separate and distinct from a "taking" analysis and therefore, it is outside of the scope of this limited appeal.

authority by designating the interior of the Boyd Theater, and that the Commission's order was not supported by sufficient evidence. We find the Commission exceeded its statutory authority and thus we vacate the Commission's order designating as historical the Boyd Theater; therefore, we need not reach the issue of the sufficiency of the evidence.

The Historical Commission notified the owners of the Boyd Theater that it had determined that both the interior and exterior of the theater was historically and architecturally significant in the following notice:

> The Boyd Theater at 1908 Chestnut Street has architectural and historical significance as a magnificent and rare example of an intact Art Deco movie palace and as the finest remaining movie theater of Hoffman and Henon, the most important theater design firm in Philadelphia. The Boyd Theater which opened in 1928 is one of only two remaining first run movie palaces left in Philadelphia and the only one that is largely intact inside and out. The exteriors of the theater with its unusual curl gable and deeply recessed entryway encompassing flanking storefronts is a fine example of the Art Deco style. The interior of the Boyd through its fine detail and rarity is one of the most important Art Deco interiors left in the City. The lobbies contain magnificent etched, gilded and stained mirrors with stylized nudes and flowers, Art Deco niches and plaster elements. The auditorium retains its balcony, scalloped proscenium arch and stage, is profusely decorated and contains a mural honoring "The Modern Woman." The Boyd which had an organ and full time organist was the first theater where "Cinerama" was used in Philadelphia. The architects and engineers, Hoffman and Henon, who designed the Boyd built over 100 theaters in the Philadelphia area between 1921 and 1930 creating such theater masterpieces as The Erlanger, The Stanley and the enormous Mastbaum Theater. The Boyd, the only Art Deco theater by Hoffman and Henon serves as their finest remaining work in Philadelphia.

Appellant's Reproduced Record at 179 (48 E.D.App.Dkt. (1990)). United Artists argued that the designation of the interior of the building is outside of the scope of the ordinance.

Our review of the Philadelphia Historic Commission's determination is limited to whether

the adjudication is in violation of the constitutional rights of the Appellant, or is not in accordance with law or that the provisions of subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the Court may enter any order authorized by 42 Pa.C.S. § 706.[8]

2 Pa.C.S. § 754(b) ("Disposition of Appeal"). *See, e.g., Tegzes v. Bristol Twp.*, 504 Pa. 304, 308, 472 A.2d 1386, 1387 (1984).

The original owner, Sameric Corporation, challenged the Commission's designation of the interior of the Boyd Theater. The Commonwealth Court rejected the owner's argument, and held that the intent of the ordinance was to encompass the interior as well as the exterior of historic landmarks:

The more perplexing problem we must resolve is whether the Commission exceeded its authority by designating as historic the *interior* of the theater. The ordinance vests the Commission with the authority to designate "buildings, structures, sites and objects." The Commission relied on the ordinance's definition of "building" as "[a] structure, its site and appurtenances created to shelter any form of human activity." On this aspect alone, we believe that in order for a building to effectuate the process of sheltering it most certainly requires an interior. Moreover, where the words of a statute or ordinance are not explicit, the intent

8. Section 706 provides:

An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.

may be ascertained by considering, among other matters, the object to be attained.

Here, without explicit reference to building *interiors,* the ordinance seeks to protect architectural styles significantly representative of historical and cultural development. Thus, we are not persuaded by [United Artists] argument that the ordinance may legitimately preserve the theater's exterior but exclude the interior. This is so, particularly where the interior design reflects the same architectural elements. Rather, we conclude that the City Council intended "building" to include both the interior and exterior.

*Sameric Corp. v. City of Philadelphia,* 125 Pa.Commw. 520, 524–25, 558 A.2d 155, 157 (1989) (citations omitted) (footnotes omitted).

The Commonwealth Court is incorrect. The Historical Commission is not explicitly authorized by statute to designate the interior of the building as historically or aesthetically significant. "[T]he power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist." *Pennsylvania Human Relations Comm'n v. St. Joe Minerals Corp.,* 476 Pa. 302, 310, 382 A.2d 731, 735–36 (1978) (quoting *Green v. Milk Control Comm'n,* 340 Pa. 1, 3, 16 A.2d 9 (1940)). The only reference to the interior of the building is in Section 14–2007(8)(c) which places the following duty of care on the owner of a historically designated structure:

The exterior of every historic building, structure and object and of every building, object and structure located within an historic district shall be kept in good repair *as shall the interior portions of such buildings, structures and objects, neglect of which cause or tend to cause the exterior to deteriorate, decay, become damaged or otherwise fall into disrepair.*

(emphasis added). The plain meaning of this ordinance is that the interior must be maintained physically (and not aesthetically) for the express purpose of supporting the exterior of the building. However, the Commission exceeded that authority by designating the interior of the Boyd Theater. There is no

"clear and unmistakable" authority to designate the interior of a building; therefore, the Commission possesses no such power. By designating the interior of the Boyd Theater, the Commission committed an error of law.

Having determined that the Commission made an error of law, we must apply the appropriate remedy. It would not be possible for us to vacate only the portion of the Order which designates the interior. We do not have before us any evidence regarding what interior portions support the exterior, nor can we separate the rationale and evidence which referred only to the exterior of the Boyd Theater from that of the interior in order to review its sufficiency. Thus, we are constrained to vacate the entire order of the Commission.

Accordingly, the Order of the Commonwealth Court is reversed, and the Order of the Commission is vacated.

LARSEN and McDERMOTT, JJ., did not participate in the decision of this case.

PAPADAKOS, J., files a concurring opinion.

PAPADAKOS, Justice, concurring.

Although I remain firmly committed to the proposition that the effects of an historic designation of private property without the consent of the owner constitute a "taking" and requires just compensation under our Constitutions, both federal and state, yet, nevertheless, I can join with the majority in reversing the Order of the Commonwealth Court and in vacating the Order of the Commission. I read the Majority Opinion as limiting the issue to "the sole issue of whether the designation of a building as historic is a "taking" under our Constitution, requiring just compensation." (Opinion, p. 614).