676 A.2d 207

CITY OF PITTSBURGH, Historic Review
Commission, Appellants,

v.

Alvin WEINBERG and Shirley Weinberg, his wife, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1995.

Decided May 21, 1996.

Jacqueline R. Morrow, George R. Specter, Pittsburgh, for City of Pittsburgh and Historic Review Com'n.

Alexandra E. Acosta, Washington, DC, Brenda Barrett, Harrisburg, for Amicus Curiae.

Ellen H. Wymard, Pittsburgh, for City of Pittsburgh.

John Elash, Pittsburgh, for Alvin and Shirley Weinberg.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

NIX, Chief Justice.

The City of Pittsburgh, Historic Review Commission ("Commission") appeals from the Order of the Commonwealth Court which affirmed the Allegheny Court of Common Pleas' reversal of the Commission's refusal to grant a certificate of appropriateness for the demolition of a designated historic structure. We granted allocatur in order to review the standard used by the lower courts in determining that Appellees, Alvin and Shirley Weinberg, met their burden of proving that they would suffer economic hardship as a result of the Commission's action. Because we find that Appellees failed to demonstrate that they could not make any economic use of their property, we agree with the Commission's decision to deny permission to demolish the structure, and therefore, reverse the Order of the Commonwealth Court.

The structure at issue in this case is the Howe–Childs–Gateway House ("Gateway House" or "House"), which is

located at the southeast corner of Fifth Avenue and Woodland Road in the City of Pittsburgh. The Gateway House was designated an historic structure in April 1986 pursuant to a Pittsburgh ordinance governing designation and preservation of historic structures and historic districts.

The Gateway House, a two and one-half story frame dwelling, was erected around 1860 in the Gothic Revival style and is a part of what was known as Fifth Avenue's Millionaire's Row. At the time of its designation as an historic structure, the Gateway House was owned by Greystone Associates ("Greystone"), the developer of a townhouse project in the area of the House. The City Planning Commission approved the Greystone project subject to conditions which, *inter alia,* required the developer to pursue designation of the Gateway House as a local historic structure and submit all plans for the renovation of the House to the Historic Review Commission for review and approval.

Greystone pursued designation but never renovated the Gateway House. In February 1988, within two years of designation of the Gateway House as an historic structure, the developer sold the property to Appellees. Appellees had entered into an agreement to purchase a new townhouse from Greystone. When Appellees became aware that there were drainage problems at the site of the townhouse, they wanted to be released from the transaction. Greystone was willing to release them if Appellees agreed to purchase the Gateway House. Greystone sold the house and lot to Appellees for $175,000. No mortgage was involved in the transaction. After Greystone sold the property to Appellees, the Gateway property was reassessed at $40,000, which represented an estimated fair market value of $160,000.

When Appellees bought the Gateway property (structure and land), they knew that the house had been designated an historic structure and would be subject to restrictions imposed by the Pittsburgh Ordinance. These restrictions included a prohibition on altering or demolishing the structure unless the owner obtained from the Commission a certificate of appropriateness allowing such action.

The Gateway House, when acquired by Appellees, was in a dilapidated condition. Because they intended to use the House as their residence, Appellees obtained the Commission's permission to have certain restoration work done. Their contractor indicated he could not guarantee the work because the House had serious structural problems. When Appellees discovered that Pittsburgh National Bank would not grant a mortgage to finance the cost of rehabilitation because the House did not meet the bank's collateral requirements,[1] Appellees sought a certificate of appropriateness from the Commission to demolish the house. It was their intention to replace it with a new brick house. None of the restrictive covenants in the deed from Greystone to Appellees would prevent Appellees from doing so.

The Commission conducted a hearing on Appellees' application for a certificate of appropriateness. No verbatim record of the testimony was made. The Commission refused to grant a certificate, and Appellees appealed to the Allegheny County Court of Common Pleas. That court remanded the matter to the Commission to make a full and complete record.

The Commission subsequently held hearings on June 7 and August 2, 1991. At the first hearing, Appellees presented the testimony of Douglas Berryman, an architect, and Lee Goldblum, a realtor. Mr. Berryman testified that the Gateway House was in poor condition but not to the point that it could not be restored. (R.R. at 186a–191a). The contractor's estimated cost of restoring the Gateway House was $567,000.[2] (R.R. at 193a). The architect's fee for the pro, t was estimated at $35,500. (R.R. at 199a). In order to construct a new brick house on the site following demolition of the Gateway

1. Specifically, the Vice President of Pittsburgh National Bank indicated that the House appeared to be in rapid deterioration and the cost of the necessary renovations would exceed the fair market value of the House after those renovations were completed. (R.R. at 84a). He did, however, state that the bank would consider a commercial loan secured by other collateral. (R.R. at 84a).

2. This figure does not include an estimated $45,000 to $50,000 to construct a two-car garage for a single family.

House, Mr. Berryman estimated that it would cost in the range of $570,000 to $600,000. (R.R. at 201a).

Appellees also presented the testimony of Lee Goldblum, a realtor with the Howard Hanna Real Estate Company. Mr. Goldblum opined that a house renovated as two separate units could be marketed for $250,000 each and a single family residence might sell in the range of $500,000 to $550,000. (R.R. at 243a, 245a). He further testified that a new house built on the site of the Gateway House could be worth $800,000. (R.R. at 250a). Mr. Goldblum also recounted for the Commission his experience in trying to sell the Gateway property. He stated that there were many people who expressed interest in the property during the time that it was marketed by his firm; however, no one was willing to commit the resources necessary to restore the house to a suitable condition. (R.R. at 252a–253a). Finally, Mr. Goldblum speculated that the Gateway House could be sold in the two-hundred-thousand dollar range in unimproved condition, although he conceded that it would be impossible to know for sure "without trying to market it full tilt." (R.R. at 253a, 272a–274a).

On August 2, 1991, the Commission reconvened in order to reach a decision on Appellees' request for a certificate of appropriateness to demolish the Gateway House. At that time, the findings and recommendation of the Commission's staff were submitted to the Commission for consideration. After deliberation, the Commission voted to accept the findings and recommendation of the staff. Specifically, the Commission found that the demolition of the Gateway House would destroy a structure of major historical and architectural significance; that the Gateway House was not structurally unsound; that Appellees knew of the historic designation of the house and the ramifications of such a designation; and that renovations would cost (excluding purchase price and interim expenses) approximately $650,000 for a single-family house with garage and $700,000 for a two-unit residence with two garages. (R.R. at 292a–294a, 296a–297a). The Commission also noted that "the purchase price should not be used as an

element of the hardship argument, since a mistakenly high payment for the building was a matter under the control of the owners." (R.R. at 297a). The end result of the Commission's deliberations was the denial of Appellees' application for demolition of the Gateway House.

Appellees appealed the Commission's adjudication to the Court of Common Pleas of Allegheny County. The trial court reversed on the basis that the record did not support the Commission's finding that Appellees failed to meet their burden of showing that the sale of the Gateway House was impracticable. *Weinberg v. City of Pittsburgh, Historic Review Comm'n,* No. SA981 of 1990, slip op. at 28 (C.P. Allegheny County Nov. 29, 1993). The court held that the Commission erred as a matter of law in concluding that Mr. Goldblum's testimony concerning the fair market value of the house was equivocal and, thus, incompetent. *Id.* at 20. The common pleas court found nothing inherently unreliable in Mr. Goldblum's testimony that the fair market value of the house after renovation would be less than the cost of renovation. *Id.* at 24. Based on its interpretation of Mr. Goldblum's testimony, the court concluded that renovating the Gateway House was not economically feasible because the cost of renovations would be greater than the fair market value of the property after the house was renovated. *Id.* at 31.

The Commission appealed to the Commonwealth Court. In affirming the trial court's decision, the Commonwealth Court found that "there was substantial evidence supporting the conclusion of the Commission that the cost of renovation as a single family residence was about $650,000 to $700,000, and there was no substantial evidence that the cost of renovating the property would not exceed the value of the property after renovation." *Weinberg v. City of Pittsburgh, Historic Review Comm'n,* 651 A.2d 1182, 1188 (Pa.Cmwlth.1994). It agreed with the trial court that it was not economically feasible for Appellees or any subsequent owners to undertake renovation of the Gateway House. *Id.*

In reaching its determination that the Gateway House could not be renovated in an economically feasible manner, the Commonwealth Court relied on the seminal United States Supreme Court case *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), as well as this Court's decision in *United Artists' Theater Circuit v. City of Philadelphia*, 535 Pa. 370, 635 A.2d 612 (1993). In *Penn Central*, the Landmark Preservation Commission of New York City designated Grand Central Terminal as a landmark. The owner of the terminal subsequently entered into a contract with a company to construct a multi-story office tower over the terminal. The Preservation Commission rejected the plans for the office tower construction because it believed that the terminal's historic and aesthetic features would have been adversely affected. The owner did not seek judicial review of that decision but instead filed suit in state court claiming that the historic designation constituted a taking of its property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The trial court agreed and held that the landmarks law, as applied to the owner, was unconstitutional. The New York Court of Appeals ultimately reversed that decision. The United States Supreme Court affirmed and held that the law did not constitute a taking of the owner's property within the meaning of the Fifth Amendment as made applicable to the states through the Fourteenth Amendment. *Penn Central*, 438 U.S. at 138, 98 S.Ct. at 2666, 57 L.Ed.2d at 657.

The Supreme Court in *Penn Central* reaffirmed the principle that "[s]tates and cities may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city." 438 U.S. at 129, 98 S.Ct. at 2661, 57 L.Ed.2d at 651 (citations omitted). It stated, however, that the impact of such restrictions must be considered in order to determine whether the interference with the property "is of such a magnitude that 'there must be an exercise of eminent domain and compensation to sustain [it].'" *Id.* at 136, 98 S.Ct. at 2665, 57 L.Ed.2d at 656 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct.

158, 159, 67 L.Ed. 322 (1922)). The Court thus concluded that the historic designation of Grand Central Terminal was not a taking because it did not in any way interfere with the owner's "primary expectation concerning the use of the parcel." *Id.* at 136, 98 S.Ct. at 2662, 57 L.Ed.2d at 656.

More recently in *United Artists' Theater Circuit v. City of Philadelphia*, 535 Pa. 370, 635 A.2d 612 (1993), this Court concluded that the designation of property as historic without the consent of the owner does not constitute a taking pursuant to Article I, Section 10 of the Pennsylvania Constitution. In so holding, we acknowledged that "this Court has continually turned to federal precedent for guidance in its 'taking' jurisprudence, and indeed has adopted the analysis used by the federal courts." *Id.* at 377, 635 A.2d at 616. After undertaking a thorough review of our past reliance on federal caselaw, we identified three conditions that determine whether governmental action constitutes a taking requiring just compensation. *Id.* at 381, 635 A.2d at 618. The condition of particular concern here is that "the means [employed by the government] must not be unduly oppressive upon the property holder, considering the economic impact of the regulation. . . ." *Id.* To this end, we have recognized that "action in the form of regulation can so diminish the value of property as to constitute a taking." *Id.* at 379, 635 A.2d at 617 (quoting *Andress v. Zoning Bd. of Adjustment of Philadelphia*, 410 Pa. 77, 85, 188 A.2d 709, 713 (1963)) (further citation and emphasis omitted). "However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation." *Id.*

In a case factually similar to the instant case, the Commonwealth Court in *First Presbyterian Church v. City Council of York*, 25 Pa. Cmwlth. 154, 360 A.2d 257 (1976), upheld the city council's denial of a permit to demolish an historic structure known as York House. In addressing the Church's claim that the council's actions constituted a deprivation of property rights without due process, the Commonwealth Court adopted the test articulated by the Fifth Circuit in *Maher v. City of*

*New Orleans,* 516 F.2d 1051 (5th Cir.1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976), which required the property owner to show "that the sale of the property was impracticable, that commercial rental could not provide a reasonable rate of return, or that other potential use of the property was foreclosed." *First Presbyterian,* 25 Pa. Cmwlth. at 161, 360 A.2d at 261 (quoting *Maher,* 516 F.2d at 1066). Applying that test, the Commonwealth Court concluded that the refusal of the permit to demolish the structure did not go so far as to preclude the use of York House for any purpose for which it was reasonably adapted. *First Presbyterian,* 25 Pa. Cmwlth. at 161, 360 A.2d at 261. Accordingly, it held that the Church did not meet its burden of proving that the city council's actions constituted a taking without just compensation. *Id.* at 162, 360 A.2d at 261.

■ Guided by the foregoing standards and the record of the proceedings below, we must conclude that the trial court erred when it held that the evidence did not support the Commission's finding that Appellees failed to prove economic hardship. The trial court noted that at the June 7, 1991, hearing

> [Appellees] undertook their burden of proving that, if not permitted to demolish the Gateway House, they could not make any economic use of the property, by presenting evidence to show that the cost of renovating the House would be greater than the fair market value of the House after renovations were completed.

*Weinberg v. City of Pittsburgh, Historic Review Comm'n,* No. SA981 of 1990, slip op. at 15 (C.P. Allegheny County Nov. 29, 1993). Although the Commission determined that Appellees failed to meet their burden, the trial court disagreed insofar as the Commission's findings were based on a partial rejection of Mr. Goldblum's testimony. *Id.* at 20.

The Commonwealth Court found that there was substantial evidence to support the Commission's conclusion that the cost of renovation as a single family residence was $650,000 to $700,000. *Weinberg v. City of Pittsburgh, Historic Review*

*Comm'n,* 651 A.2d 1182, 1187 (Pa.Cmwlth.1994). However, like the trial court, it concluded that there was insufficient evidence to support the Commission's finding that the cost of renovating the property would not exceed the value of the property after renovation. *Id.*

We disagree with the conclusion of the lower courts that the record does not support the Commission's decision to deny a certificate of appropriateness. Additionally, it is apparent that both the trial court and Commonwealth Court failed to consider the circumstances surrounding Appellees' purchase of the Gateway House in reaching their decisions. As the United States Supreme Court has observed, questions concerning the economic impact of governmental actions are essentially answered by ad hoc, factual inquiries that focus on several different factors. *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978). Two important factors identified by the Court in conducting this inquiry are "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations. . . ." *Id.*

Mr. Goldblum, Appellees' real estate expert, testified that he believed the property could be sold as it exists for between $200,000 and $300,000; as a renovated single family house for $500,000 to $550,000; and as a renovated two family residence for $500,000. (R.R. at 70a, Finding No. 9). Mr. Goldblum qualified these statements by indicating that it was impossible to know the price that the property would bring until it was put on the market and promoted "full tilt." (R.R. at 70a, Finding No. 9). When questioned further by one Commission member, Mr. Goldblum expressed an opinion that a renovated, single-family residence on the site of the Gateway House could be sold for as much as $800,000. (R.R. at 70a, Finding No. 9).

Appellees assert that the present value of the property is not a relevant consideration for purposes of determining economic hardship because "any [subsequent] purchaser will be burdened with the same oppressive requirements of restoration brought about by the historic designation." Brief for

Appellees at 20. We find this argument wholly unpersuasive. Any burden imposed on a subsequent purchaser does not affect Appellees after they receive valuable consideration for their property. Just as Greystone, the prior owner of the Gateway House, cannot now complain about the costs or complications associated with the renovation of the Gateway House, Appellees likewise cannot claim that the impediments which might confront a prospective purchaser presently impact them for purposes of proving economic hardship.

■ Despite the unrefuted testimony of Appellees' expert that the Gateway property could be sold as it exists for between $200,000 and $300,000, the Commonwealth Court found that "[t]here is no competent evidence that the property could be sold as is for $200,000 to $300,000 because Mr. Goldblum testified there were no comparable properties upon which he could base an expert opinion." *Weinberg v. City of Pittsburgh, Historic Review Comm'n,* 651 A.2d 1182, 1187 (Pa.Cmwlth.1994). The Commonwealth Court is incorrect that Mr. Goldblum's estimate of the property's selling price was incompetent because of the lack of comparable properties. At the time that he testified, Mr. Goldblum had twenty-three years of experience in real estate with a particular emphasis on the area of Pittsburgh where the Gateway House is located as well as a strong interest in historic houses. (R.R. at 234a–235a). The Commission obviously gave greater deference to Mr. Goldblum's experience than to the fact that there were no properties comparable to the Gateway House when Mr. Goldblum rendered his opinion. We thus find support for the Commission's finding that Appellees failed to prove that it would be impracticable or impossible to sell their property. *See First Presbyterian Church v. City Council of York,* 25 Pa. Cmwlth. 154, 162, 360 A.2d 257, 261 (1976).

It should also be noted that Appellees received an inducement to purchase the Gateway House in the form of a release from a preexisting obligation to buy a townhouse from Greystone. (R.R. at 215a). Appellees had concerns about the inadequate drainage of the property that they were obligated to purchase and therefore "wanted out of it." (R.R. at 215a).

Although it is impossible to ascribe a monetary value to this benefit, it must nonetheless be considered when evaluating the economic impact of the Commission's actions on Appellees.

We see no reason to delve any further into the Commission's decision in this matter. Despite the thorough review by the trial court and Commonwealth Court of other testimony and evidence presented at the June 7, 1991, hearing, our inquiry need not proceed beyond the point of our determination that Appellees did not meet their burden of proving that it was impracticable or impossible to sell their property. Appellees purchased the Gateway House for $175,000 and spent approximately $36,000 on exterior repairs. The unrefuted testimony of their own expert suggests that the house could be sold for $200,000 to $300,000. That, together with the release from the obligation to purchase the townhouse from Greystone, suggests that Appellees could conceivably realize a profit if they sold the property. In any event, Appellees have not demonstrated that they have been "deprived of any profitable use" of the property. *United Artists' Theater Circuit v. City of Philadelphia*, 535 Pa. 370, 382, 635 A.2d 612, 618 (1993).

Our decision is bolstered by the fact that prior to the time of their purchase, Appellees knew that the Gateway House had been given an historic designation and were aware of the consequences of such a designation. (R.R. at 69a). The fact that they did not engage the services of an architect or contractor to estimate the cost or feasibility of restoring the Gateway House cannot serve as a basis for their claims of economic hardship after the fact.

The Order of the Commonwealth Court is reversed and the decision of the Historic Review Commission of the City of Pittsburgh to deny a certificate of appropriateness is reinstated.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.